MIKE BROWN, ADMINISTRATOR, APPELLANT, V. CHICAGO, BURLINGTON & QUINCY RAILWAY COMPANY ET AL., APPELLEES.

FILED FEBRUARY 28, 1911.    No. 16,292.

1. Railroads: NEGLIGENCE: SPEED OF TRAIN. It is not negligence for a railway company to operate a passenger train at the rate of 45 or 50 miles an hour during a bright, still day, in the open country where there are no obscure crossings.

2. ———: DEATH AT CROSSING: ISSUES: INSTRUCTIONS. If, in an action against a railway company to recover damages for the death of the plaintiff's intestate at a crossing, the sole allegations with respect to the defendant's negligence in failing to give warning of the approach of its train are that it did not sound a whistle or ring a bell as provided by section 104, ch. 16, Comp. St. 1909, it is not error to charge the jury that, if a bell were rung or a whistle sounded as required by statute, they should find for the defendant.

3. Trial: INSTRUCTIONS: CONSTRUCTION. Instructions should be read and construed together, and, if as a whole they state the law correctly, they will be held sufficient, although one or more of them, considered separately, may be subject to just criticism.

4. ———: REFUSAL OF INSTRUCTIONS. If the court on its own motion charges the jury substantially as requested, it is not error to refuse to restate those principles of law.

5. Witnesses: EXAMINATION. A witness should ordinarily be permitted to state the particular circumstance which directly called his attention to the fact about which he is called to testify.

6. Appeal: EVIDENCE: MOTION TO STRIKE. It is not error to overrule a motion to strike from the record all of an answer to an interrogatory where a part of the answer is competent, material, relevant, and responsive to the question.

APPEAL from the district court for Custer county: BRUNO O. HOSTETLER, JUDGE. *Affirmed.*

*Sullivan & Squires, J. S. Kirkpatrick* and *C. H. Holcomb,* for appellant.

*J. E. Kelby* and *F. E. Bishop, contra.*

ROOT, J.

About 12 o'clock M., September 30,1906, George Brown was killed while attempting to drive over the tracks of the Burlington railway at a point where it intersected a rural highway in Custer county. The plaintiff is the administrator of Brown's estate and prosecutes this action against the railway company and its locomotive engineer. The defendants prevailed, and the plaintiff appeals.

The principal errors argued relate to the instructions. The issue of negligence joined by the pleadings is narrow. After describing the topography of the country in the vicinity of the crossing, the pleader charges "that said defendants carelessly and negligently, and without regard to the rights and safety of deceased and his companion, approached said crossing at such speed that, on discovering the said parties at said crossing, defendants were unable to control or stop said train, and carelessly and negligently approached said crossing without sounding the whistle of said engine and without ringing the bell thereon, at any point within 80 rods of said crossing." There is no other allegation, general or specific, that the defendants were negligent or that they violated any duty they or either of them owed the deceased.

The course of the highway is east and west, and the path of the railway southeast and northwest, but they cross each other practically at right angles. At this point the railway is laid upon a fill about five feet high, which gradually diminishes as it continues northward for about 600 feet, where it disappears, and the railway then enters a cut, not more than six feet deep at any point, which extends about 700 feet northwestward. For at least 800 feet westward from the crossing the highway is level, and there are no obstructions to the view in the area of the angle between the highway and the railway before it enters the cut.

Immediately before the accident Mr. Brown was driving two horses attached to a buggy. Brown and his companion were traveling eastward and the horses were walking. The sun was unclouded and there was no perceptible wind. The engineer and his fireman testify that the regular crossing whistle was sounded at the whistling post one-fourth of a mile northwest of the crossing, and that the bell upon the engine was ringing continuously during the entire trip. Two witnesses, traveling westward on the highway one-fourth of a mile east of the crossing at the time of the accident, testify that they did not hear the whistle sound or the bell ring. Two witnesses, one-half of a mile from the crossing at the time of the collision, testify to the same effect. Several passengers testify that they did not hear the bell ring or the whistle sound. Mr. Brown's companion testified in substance to the same effect. The express messenger says the highway warning was given as testified to by the engineer. There were 10 cars in the train. It was behind time and moving at the rate of from 40 to 50 miles an hour, probably 45 miles an hour. Mr. Brown was familiar with the crossing, knew that the train was late, and mentioned that fact when about 75 feet west of the crossing. The near horse was killed by the impact of a collision with the cylinder on the right hand side of the engine. Mr. Brown's companion insists that Brown looked northwestward just before the

team commenced to ascend the incline to the crossing and that the witness thenceforward was continuously on the lookout for the train, but did not discover it until the heads of the horses were within seven feet of the westward rail of the track, and that he cannot remember what subsequently happened until he regained consciousness in the baggage car. The jury were instructed that, if they found that the statutory warning was given by those in charge of the train, they should find for the defendants.

The plaintiff argues that the defendants should have given reasonable and timely warning of the approach of the train, and that sounding a whistle or ringing a bell as directed by statute was not a reasonable warning. It is not necessary to determine this question. In *Chicago, R. I. & P. R. Co. v. Sporer,* 69 Neb. 8, we had occasion to consider the law with respect to the duty of a railway company to give warning of the approach of its trains to an obscure crossing, and in *Schwanenfeldt v. Chicago, B. & Q. R. Co.,* 80 Neb. 790, we discussed the duty of a railway company to give notice of the movements of its trains upon a track in a city street. In the instant case no facts are pleaded to suggest that the defendants should have done more than to run the train at such a rate of speed that it could have been stopped so as to have avoided the collision, and further to observe the provisions of section 104, ch. 16, Comp. St. 1909, which require a whistle to be sounded, or a bell of at least 30 pounds weight to be rung continuously from a point at least 80 rods from where the railway crosses a public road or street until the locomotive shall have passed the crossing. The evidence is sufficient to sustain a finding that the bell was ringing as the statute required. We do not agree with the plaintiff's counsel that the statute requires the whistle to be sounded continuously and the bell to be rung during all of the time the engine traverses the space between the whistling post and the crossing. The statute is in the alternative and cannot in reason be otherwise construed. To hold that a railway train must be so controlled, under circumstances

such as surrounded the train in question, that it can be
stopped so as to avoid a collision would paralyze traffic
and destroy the usefulness of the railways. The testi-
mony is convincing that Brown's horses were walking as
they approached the crossing, and, until it was too late to
overcome the train's momentum, there was nothing to sug-
gest to the engineer that the driver would attempt to cross
the railway.

We do not give unqualified approval to the twelfth par-
agraph of the court's charge. It deals with the subject of
contributory negligence, and, if there were no other in-
structions upon this subject, it might lead the jury to be-
lieve that it was Mr. Brown's imperative duty to avoid the
collision. However, when this instruction is considered
in connection with the tenth and eleventh instructions,
given by the court on its own motion, and the ninth in-
struction requested by the plaintiff and given by the court,
we do not think the jury were misled, but must have un-
derstood that the law charged Mr. Brown with the duty
of exercising his faculties for his own protection, and to
use them with that care and caution a reasonably prudent
man would have exerted under the circumstances of the
case. The same discussion will apply to instruction num-
bered 13, given by the court on its own motion. Instruc-
tions must be read and construed together, and, if as thus
considered they state the law correctly, should not be held
prejudicially erroneous because one or more of them,
taken separately, may be subject to just criticism. *Smith
v. Meyers,* 52 Neb. 70; *Chicago, B. & Q. R. Co. v. Oyster,*
58 Neb. 1; *Lincoln Traction Co. v. Brookover,* 77 Neb. 221.
We conclude that instruction numbered 11, given by the
court, contained the substance of instruction numbered 5,
requested by the plaintiff, and there was no error in re-
fusing to restate the principles announced in number 11.
*Curry v. State,* 5 Neb. 412.

A physician, Dr. Washburn, was riding upon the train
at the time of the accident, and subsequently attended Mr.
Applin, Mr. Brown's injured companion. Dr. Washburn

Brown v. Chicago, B. & Q. R. Co.

in his deposition testified, in substance, that just before the accident his attention was challenged by a statement made by his little boy: "Look, papa, how fast those horses are coming!" An objection, interposed evidently during the trial, to the question and a motion to strike out the answer thereto were overruled. A witness may be permitted to state the circumstances which directed his attention to a material fact, and there was no error in permitting the witness to answer the question. 2 Elliott, Evidence, sec. 826. Whether the child's statement was of a character to permit his father to testify thereto is not necessarily involved, because part of the answer was competent, and the motion to suppress was directed to the entire answer, and not solely to the objectionable part thereof. Finally, the statement could not have prejudiced the plaintiff because the principal surviving actors of the tragedy agree that the horses were walking, and the instructions do not reveal that the case was tried or defended on the theory that Mr. Brown's horses were not under his control at the time of or immediately before the accident. If it is conceded, as we think it must be upon a consideration of all of the evidence, that the bell upon the defendants' locomotive engine weighed 100 pounds or upwards and was ringing continuously from the whistling post until the locomotive passed the crossing, it must follow that, upon the cause of action pleaded in the petition, the defendants should prevail, and the fact that some of the instructions interpreted the law liberally in the defendants' favor could not prejudice the plaintiff. We do not find it necessary to say that the evidence of George Brown's negligence is so conclusive that no verdict other than the one returned would be sustained by the evidence, but we do say that the evidence to suggest that he was in the exercise of ordinary care at the time of and immediately before the accident is meagre indeed.

Upon the entire record, we find no error prejudicial to the plaintiff, and the judgment of the district court is

42                                        AFFIRMED.