WALTER H. JURGENSEN V. STATE OF NEBRASKA.

283 N. W. 228

FILED JANUARY 4, 1939.   No. 30388.

(537)

538

*Richard F. Stout* and *Jay O. Rodgers,* for plaintiff in error.

*Richard C. Hunter, Attorney General, Bert L. Overcash* and *Max G. Towle, contra.*

Heard before ROSE, C. J., EBERLY, PAINE, CARTER and MESSMORE, JJ.

ROSE, C. J.

In a prosecution by the state of Nebraska in the district court for Lancaster county, Walter H. Jurgensen and Jules H. Johnson, defendants, were charged with embezzlement in violation of the statute which provides:

"If any clerk, agent, attorney at law, servant, factor or commission agent of any private person or any co-partnership, except apprentices and persons within the age of eighteen years, or if any officer, attorney at law, agent, clerk, servant, factor or commission agent of any incorporated company or joint stock company, including all persons employed or commissioned by any employer, corporate or private, shall embezzle or convert to his own use, fraudulently take or make away with or secrete with intent to embezzle or fraudulently convert to his own use, without

the assent of his or her employer or employers, or the owner or owners thereof, any money, goods, rights in action or other valuable security or effects whatever, belonging to any other persons, body politic or corporate, or which is partly the property of any other persons, body politic or corporate, and partly the property of such officer, attorney at law, agent, clerk, servant, factor or commission agent of any incorporated company or joint stock company, including all persons employed or commissioned by any employer, corporate or private, which shall have come into his or her possession or care, in any manner whatsoever, or if any officer elected or appointed to any office of public trust in the state, or if any executor, administrator, guardian or assignee for the benefit of creditors shall embezzle or convert to his or her own use any money, property, rights in action or other valuable security or effects whatever belonging to any individual or company or association, that shall come into his or her possession by virtue or under color of his or her relation as officer, executor, administrator, guardian or assignee, every such person so offending shall be punished in the manner provided by law for feloniously stealing property of the value of the article so embezzled, taken or secreted or of the value of any sum of money payable or due upon any right in action so embezzled." Comp. St. 1929, sec. 28-544.

The county attorney of Lancaster county, acting for the state, presented the information which charged that defendants, on or about September 11, 1934, in the county of Lancaster and state of Nebraska, then and there—

"Not being apprentices or persons within the age of eighteen years, and then and there being the agents of one Chester C. Kaderli, of Potter, Nebraska, a private person, then and there, by virtue of their employment as such agents of said private person, did receive and take into their possession Nine Hundred Sixteen and no/100 Dollars ($916) in money, of the value of Nine Hundred Sixteen and no/100 Dollars ($916), the personal property of the said Chester C. Kaderli, and then and there unlawfully, feloni-

ously and with intent to defraud the said Chester C. Kaderli, did convert to their own use and embezzle said money, without the assent of the said Chester C. Kaderli, their principal and employer, contrary to the form of the statutes in such cases made and provided, and against the peace and dignity of the state of Nebraska."

Upon a separate trial of Walter H. Jurgensen, defendant, who had pleaded not guilty, the jury rendered a verdict against him in the following form:

"We, the jury, duly impaneled and sworn in the above entitled cause do find the defendant guilty as charged in the information and we do find the amount embezzled to be the sum of $549.71."

For that felony defendant was sentenced to serve in the penitentiary a term not less than two years nor more than five years.

As plaintiff in error, defendant presented to the supreme court for review the record of his conviction.

It is first argued on behalf of defendant that the conviction must be reversed on the ground that the trial court erred to his prejudice in giving instruction No. 9 to the jury, as follows:

"(1) That on or about September 11, 1934, one Chester C. Kaderli was the owner of certain shares of building and loan stock then having a fair and reasonable market value in money;

"(2) That on or about that date the defendant, then being a person of more than 18 years of age, together with one Jules H. Johnson, his employee, received such building and loan stock into their possession from said Kaderli for the purpose of exchanging it for municipal or government bonds or other securities satisfactory to him upon inspection thereof;

"(3) That defendant thereafter in Lancaster county, Nebraska, without Chester C. Kaderli's consent and with intent to defraud him, used some part or all of said building and loan stock, or the money received therefrom, for his own purposes, use or benefit, or for the purposes, use

or benefit of a corporation or some other agency of which he, the defendant, was then an officer.

"If the state has established each and all of these material allegations and elements by the evidence beyond a reasonable doubt, then you will find the defendant guilty as charged in the information. If the state has failed to establish by the evidence beyond a reasonable doubt any one or more of such material allegations and elements, then you must find the defendant not guilty."

The third paragraph or fragment of this ninth instruction is challenged as permitting the jury to find defendant guilty, if he embezzled "building and loan stock" under the information which charges alone the embezzlement of "money." The specific language condemned by defendant as prejudicially erroneous is: "Used some part or all of said building and loan stock, or the money received therefrom, for his own purposes." It is insisted that the jury were thus permitted to convict defendant of an offense with which he was not charged, in violation of his constitutional right to notice of the nature and cause of the accusation against him, to notice of the exact property involved in the charge of embezzlement, and to notice of the facts upon which the state relies for conviction. It is asserted that these rights were invaded by the instruction permitting a conviction for embezzlement of building and loan stock. The assigned error in this instruction was skillfully argued at the bar and in the brief and precedents in which accused defendants in other prosecutions were protected from convictions for offenses not charged were cited and analyzed by counsel for defendant.

Error may creep into the proceedings in criminal prosecutions in spite of impartiality, care, learning and vigilance of the trial judge. It is only error prejudicial to a right of accused or the denial of a substantial legal right that requires the reversal of his conviction. Harmless error does not require a second trial. The law recognizes the possibility of harmless imperfections in the proceedings of judicial tribunals and does not defeat itself by exacting ab-

solute perfection in bringing malefactors to justice. A statute relating to the review of criminal prosecutions reads thus:

"No judgment shall be set aside, or new trial granted, or judgment rendered, in any criminal case on the grounds of misdirection of the jury, or the improper admission, or rejection of evidence, or for error as to any matter of pleading or procedure, if the supreme court, after an examination of the entire cause, shall consider that no substantial miscarriage of justice has actually occurred." Comp. St. 1929, sec. 29-2308.

An "examination of the entire cause" to determine whether there was a prejudicial misdirection of the jury in the case at bar required scrutiny and consideration of four large volumes of proceedings and evidence. Defendant was president of both the United Savings and Loan Association and the Western Union Life Insurance Company with offices in the city of Lincoln. Jules H. Johnson, when agent of the insurance company, September 11, 1934, knowing that Chester C. Kaderli, railroad station agent at Potter, Nebraska, had stock and deposits in the loan association, approached him in the railroad ticket office there and by false representations procured from him his loan association stock and the pass-book evidencing his deposits—valuable property. Kaderli accepted a receipt in the following form:

"Sept. 11, 1934.

"Received of Chester C. Kaderli, Cert. #733 to apply on the sum of Twelve Hundred Dollars on account of the Investment Bond described in the subscription to which the above name is signed. Bonds to be delivered personally and be satisfactory before B. & L. deposits transferred. (This receipt is valid only for payments made payable to the company.)

"The Western Union Life Insurance Company,
"By J. H. Johnson, Salesman."

On the margin of the receipt as it appears in the record are the following entries in ink: "Pass-book, $844.75; card, $870.50; received, $916.17."

Kaderli entrusted his loan association stock and deposits to Johnson, the insurance company and the defendant for the purpose of having them exchanged for government or municipal bonds or other securities satisfactory to Kaderli. The exchange was never made. What Johnson received was never returned to Kaderli. The latter never received in exchange any bonds or other securities satisfactory to him or other compensation or consideration of any kind for his loan association stock or deposits. After he parted with the property entrusted to his agents for the purpose stated, it was sold and part of the proceeds credited in dollars and cents to the "Western Union Agency" by its book entries, that name being one in which defendant transacted business. The bill of exceptions contains cogent evidence of facts thus summarized. The information charged that defendant embezzled $916 in money belonging to Kaderli. The trial court in the first instruction given directed the jury in language equivalent to the language of the statute that defendant was charged with the embezzlement of $916 of Kaderli's money. The instructions defined the statutory crime of embezzlement, including all the elements thereof, required proof of each element beyond a reasonable doubt, and directed the jury: "You must arrive at your verdict solely from the evidence adduced in open court."

It is well settled law that a felony may be defined in an instruction to the jury in the language of the statute. *Harrison v. State*, 133 Neb. 794, 277 N. W. 96. During a long trial the jury heard evidence that money was the subject of the embezzlement charged. Documents and oral testimony proved that Kaderli, for two years or more, had importuned defendant for money, making vehement demands for it repeatedly by letter, by telegram and by appeal in person. Before the examining magistrate, after the prosecution was commenced, defendant offered to make restitution by tendering Kaderli about $470 in money. The jury necessarily knew that money was the subject of the embezzlement charged. They did not find defendant guilty of embezzling building and loan stock or guilty of larceny

or guilty of obtaining money by false pretenses. They found him guilty of embezzling money as charged in the information. Their verdict already quoted herein so shows. The reviewing court should consider all the instructions given to the jury in determining whether a particular instruction is prejudicially erroneous. *Harrison v. State*, 133 Neb. 794, 277 N. W. 96. So considered, it is clear that defendant was not prejudiced or the jury misled to his injury by the language in paragraph three of the instruction under consideration.

Instruction No. 9 is also challenged as assuming to give directions on all the elements of embezzlement, while omitting to instruct the jury to acquit defendant unless he formed the intent to embezzle Kaderli's money after he received it. This position is untenable in a proper view of the entire record. Before the assailed instruction was given, the court had defined in other instructions all the elements of the crime charged under the Nebraska statute. It was apparently given to enlighten and caution the jury further on the transactions through which defendant procured money belonging to Kaderli. A principal's money, received and fraudulently appropriated by his agent to his own use in violation of the terms of the Nebraska statute on embezzlement, includes money "which shall have come into his or her possession or care, in any manner whatsoever." Comp. St. 1929, sec. 28-544. Since the instruction as a whole properly stated the law on all the material issues, the failure to instruct in addition that there could be no conviction, unless the criminal intent was formed after defendant received the money, is not a ground for reversal, a proper instruction to that effect not having been requested. The rule applicable has been stated as follows:

"Where the trial court has instructed generally as to the issues in a criminal prosecution, error cannot be predicated on its failure to instruct as to a particular phase of the case, where no proper instruction has been requested by the party complaining." *Martin v. State*, 67 Neb. 36, 93 N. W. 161. Followed in *Frades v. State*, 131 Neb. 811, 270 N. W. 314.

The instructions as a whole made it clear to the jury there could be no conviction unless the state proved beyond a reasonable doubt that defendant received and with fraudulent intent embezzled or converted to his own use, without the assent of Kaderli, money belonging to him. The assignments of error directed to instruction No. 9 are therefore overruled.

It is confidently argued on behalf of defendant that there is no competent evidence to sustain the verdict, since, as contended, criminal intent essential to embezzlement is not proved beyond a reasonable doubt. On the witness-stand defendant admitted he was indebted to Kaderli as a result of the transactions between them; said in substance he did not intend to embezzle money belonging to Kaderli; still intends to pay him what he owes him. The theory of the transactions as explained by the testimony of defendant is that they created no more than a civil liability from one individual to another and did not make him answerable to the state for a felony. In this connection assignments of error are directed to testimony as to what defendant regards dissimilar transactions to prove criminal intent. In the enactment of the embezzlement statute, the lawmakers did not contemplate the defeat of the legislative purpose by technical refinements of evidence directed to criminal intent. The convolutions and fibers of a human brain in which a criminal intent is created do not give oral expression to the mental operation. Concealment is often necessary to the accomplishment of an evil design. The person who can testify directly to criminal intent in a criminal prosecution is generally the accused, who may decline to incriminate himself. The state may resort to circumstances for proof of intent. Deliberate acts of an accused agent may throw some light on the intent by which he was prompted to defraud his principal. An adult sane person may be presumed to intend the natural and probable consequences of his voluntary acts. *Ford v. State,* 46 Neb. 390, 64 N. W. 1082. Surrounding circumstances may disclose the truth. The difficult problem of proving criminal intent was explained in a recent embezzlement case as follows:

"It is further contended by the defendant that the evidence is insufficient to sustain a verdict of guilty. This argument is based on the proposition that the state has failed to show beyond a reasonable doubt the intent of the defendant to defraud the owner of the funds alleged to have been embezzled. It must be borne in mind that the intent with which an act is done is purely a mental process and hard to establish by direct proof. It is generally a conclusion that must be drawn after a consideration of the actions of the defendant, viewed in the light of all the surrounding circumstances." *Buckley v. State,* 131 Neb. 752, 269 N. W. 892.

In a case wherein a banker was accused of embezzling money of the bank, a former opinion contains the following language in a proceeding in error:

"The record of the trial discloses that the state, over the defendant's objections, was allowed to introduce evidence of his manner of conducting the business of the bank, and of many of his transactions with that institution occurring at different times, many of them long prior to the time when the offense for which he was on trial is alleged to have been committed; and it is contended that this was reversible error. This contention cannot be sustained, for it has often been held, on principle and precedent, that the state in such cases may introduce evidence of separate and distinct acts or transactions, which may be embezzlement in themselves." *Chamberlain v. State,* 80 Neb. 812, 115 N. W. 555.

As tending to prove the intent necessary to guilt under the charge of embezzlement, the trial court admitted evidence of other transactions to the effect that the insurance company of which defendant was president, through its agents, or by defendant himself, fraudulently procured without adequate consideration and retained or sold valuable building and loan stock or other property of the owners. There were too many of these independent transactions in evidence for separate discussion in an opinion of reasonable length, but each has been examined with care in connection

with the entire record. In defendant's methods of transacting business and in respect to frauds committed, the similarity of the independent transactions on the issue of intent and the transactions in the case at bar were such as to make them admissible under the rules of evidence already stated. The purpose of evidence of this nature was limited by the trial court in an instruction as follows:

"The court permitted the state to introduce evidence of alleged similar acts at or about the same time that the act charged is alleged to have been committed, and all this evidence is to be considered by you only for the purpose of showing the intent of the accused in the particular act charged in the information and for no other purpose."

Evidence of independent transactions was not only properly admitted, but defendant's rights were protected by the limitation quoted.

Under a different assignment of error it is contended that unremovable prejudice in the minds of the jurors was created by testimony of still other witnesses on dissimilar acts of defendant. This testimony was not only stricken out at the trial, but the jury were told in a formal instruction: "You cannot consider any evidence which has been stricken out of the record by the court during the trial." There is no logical reason for assuming that the jury disregarded the instruction of the court and considered testimony not before them. The record contained proper and more convincing testimony of transactions similar to one in issue. The contention is without merit.

Defendant insists further that the conviction should be reversed and the prosecution dismissed on the ground that the state did not prove the felony charged was committed in Lancaster county where he was tried. The information and the instructions laid the venue in Lancaster county. The head offices of both corporations of which defendant was president were in Lincoln, Lancaster county. He transacted corporate and personal business there. Kaderli's bonds were transferred in Lancaster county and part of the proceeds were credited in money to the "Western Union Agency" on

its books in Lincoln and that agency, according to the evidence, was defendant. He had possession of the bonds and of proceeds of the bonds in Lincoln. Kaderli in person demanded his money from defendant in Lincoln and never received it. That the intent to embezzle was conceived in Lancaster county, where possession of the money was obtained and the felony perpetrated, was a proper deduction from the evidence.

The evidence was discussed at length by counsel for defendant and the conclusion reached that it was insufficient to sustain the verdict, but the opinion of the court to the contrary is unanimous. Nothing in the record or arguments has been overlooked. The evidence herein outlined in the discussions of the assignments of error shows substantial grounds for the verdict of the jury. The president of corporations by acting through them in committing a felony does not thus secure personal immunity from the penalty imposed by law for the felonious act. In this state the supreme court adopted from *Hamilton Ridge Lumber Sales Corporation v. Wilson,* 25 Fed. (2d) 592, the following principles:

"Although a corporation is considered a legal person in law, distinct from its stockholders, and is so recognized when there is no reason against it, yet it is just as well settled that this general doctrine should be disregarded, and the acts of the persons examined who constitute the corporation. A corporation has no thought or will of its own, and its every act is the act of the individuals who are running it, and where fraud is committed by the corporation, it is time to disregard the corporate fiction and hold the persons responsible therefor in their individual capacity." *Ashby v. Peters,* 128 Neb. 338, 258 N. W. 639.

The evidence shows that defendant assumed personal responsibility for the transactions through which Kaderli lost his building and loan stock and the proceeds thereof in money; that defendant engaged agents and attorneys to solicit terms of settlement for the loss and was advised by them to discharge his civil obligation therefor; that de-

fendant gave Kaderli a personal note in settlement and never paid it; that a check was issued for the same purpose and payment thereof stopped; that defendant agreed in writing on terms of restitution and failed to comply with them. It is familiar law that, where a principal entrusts property to his agent for a particular purpose and the agent fraudulently converts the property to his own use without the assent of the owner, a subsequent purpose, an offer or agreement of the agent to make restitution does not defeat a prosecution by the state for embezzlement.

Throughout a long trial defendant had the vigilant services of eminent counsel. The rulings of the trial court indicate judicial fairness and impartiality. Every assignment of error has been considered in connection with all the evidence without finding an error prejudicial to defendant. It was the province of the jury to determine the issue of guilt. There being no substantial ground for interference with the verdict, the judgment below is

AFFIRMED.

SIMMONS, C. J., took no part in the decision of this case.