JOHN PEW, PLAINTIFF IN ERROR, V. STATE OF NEBRASKA,
DEFENDANT IN ERROR.

83 N.W. 2d 377

Filed May 31, 1957. No. 34174.

*Charles M. Bosley*, for plaintiff in error.

*Clarence S. Beck, Attorney General*, and *Richard H. Williams*, for defendant in error.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

Boslaugh, J.

The charge made by defendant in error against plaintiff in error, referred to as the accused, is that on or about July 28, 1956, in Hitchcock County the accused, a male person more than 18 years of age, unlawfully assaulted Irene Barnes, a chaste person who was less than 18 years of age, with the intent to rape and carnally know her. §§ 28-408 and 28-409, R. R. S. 1943. The plea thereto by the accused was not guilty. The result of the trial of the charge was a verdict of guilty. A new trial was denied and accused was adjudged to be confined in the Nebraska State Penitentiary. He contests the legality of the conviction and sentence by petition in error. The assignment of error relied upon and discussed in this court is that the evidence is insufficient to sustain the conviction and judgment.

The circumstances of this case as recited by the evidence were as follows:

Irene Barnes, herein called the prosecutrix, would have been 16 years of age December 6, 1956. She was a chaste person. She had been, since May 13, 1956, living with Luella Green and Donald Green, her sister and brother-in-law, respectively, on a farm about 8 miles from Trenton. She had on week ends, commencing with June 24, 1956, been employed and served as a baby sitter in the home of the accused without unusual incident until the experiences complained of in this case. The distance between the home of the sister of prosecutrix, herein designated the Green home, and the farm home of the accused, herein spoken of as the Pew home, was considerable and the prosecutrix remained over night in the home of the latter on each occasion she was there as a baby sitter. When the services of the prosecutrix were desired, usually the accused, but on some occasions his wife, Mary Lu, came for her at the Green home and later returned her to it. Luella Green and her husband had, before March 1. 1956, lived about one-half mile from where the accused

and his family resided. The two families were neighbors and friends and after the former moved to the Trenton vicinity the two families continued to visit each other occasionally.

The accused, 32 years of age, was married and lived with his wife and four children on a farm east of Palisade. The ages of the four children were 7 years, 5 years, 3 years, and 10 months. The nearest house to the Pew home was 2 or 3 miles. The wife of the accused and two of their children had gone to Colorado and the other children were with the mother of the wife of the accused in McCook on July 28, 1956. There was no member of the family except the accused at the Pew home on that date or the following day.

The accused came to the Green home in his automobile shortly before noon on July 28, 1956. He saw and talked with prosecutrix and her sister, Luella Green. He asked them if the prosecutrix could baby sit for him. The prosecutrix said she would. Her sister agreed if he would bring her back early the next morning because they intended to attend a club picnic that day. The 28th of July 1956 was a Saturday and the picnic was Sunday. The prosecutrix prepared to go with the accused. She took with her a change of clothing. While she was getting ready the accused and her sister visited. She had prepared dinner and asked the accused to stay and have dinner with them. He declined the invitation and gave as the reason that his wife, Mary Lu, would have dinner ready for them when they reached the Pew home. During the trip to the home of the accused he and prosecutrix talked of his wife and children and accused said he had to hurry home because his wife would have dinner ready and that "they were going out that night."

It was about 1 p. m. when the accused and the prosecutrix arrived at the Pew home. There was no one there and she asked accused where his wife and children were. He did not tell her. She asked him repeatedly and he

finally said: "* * * they went to the hills." He explained this meaning later saying that they had gone to the mountains of Colorado. She asked accused to return her to the Green home. He refused and caressed her breasts and attempted to make love to her. He made an effort to insert his hand inside her dress but she prevented him. He pushed her down in a chair and continued to molest her. She opposed his advances by hitting, kicking, and pushing him away and she demanded that he discontinue his wrongful behavior and treat her properly. He became angry and left about 2 p. m. He did not say where he was going or when he would return. The prosecutrix was alone at the Pew home until about 5:30 p. m. when the accused came home. He drank three or four beers before he went away and when he came back he brought a supply of beer and gin. He offered prosecutrix a drink of the latter. She declined and he forced her to drink it. He then put his arms around her and attempted to get her on a davenport. She made the best effort she could to prevent him but he got her arms behind her and forced her onto it. He then released her arms and she got away from him. He continued to follow and molest her. He had her on the davenport two or three times and indulged in conduct of such a character as to permit of no doubt of his intention and purpose to ravish her. He injured her neck. He struck her with his fist and injured her. He inflicted bruises on both of her legs above the knees and on one of her arms. He scratched the other arm. He broke one of the shoulder straps of her slip and otherwise tore it. On one occasion while she was on the davenport he attempted to remove her clothing. At one time the accused said to the prosecutrix during these experiences: "I ought to rape you." At another time he said: "I am going to rape you."

Don Follett, hereafter mentioned as Follett, an unmarried man about 32 years of age and a long-time acquaintance and friend of the accused, came to the

Pew home about 7 or 7:30 p. m. When he came to the house and knocked at the door the accused had the prosecutrix on the davenport. He released her and she admitted Follett. He came because of an understanding when he and the accused met while he was away from home that afternoon. The accused, sometime after Follett came to the house, renewed his conduct of molesting the prosecutrix. Follett interfered and demanded that the accused desist.

Two of the Pew children were with the mother of Mrs. Pew in McCook. The accused said the prosecutrix had to go with them to McCook to get the children. She declared she was not going to McCook and stated that she wanted to go home. The accused demanded that she go to McCook so that she could care for the children when they got back that night. The three of them went to McCook in the automobile of Follett who operated it. On the trip to McCook the accused acted improperly toward the prosecutrix in ways similar to his violations at his home during the afternoon and evening. He was displeased at the declination of the prosecutrix to his desires and he hit her on the head with his fist which caused a swelling to result. The accused and Follett, when they got to McCook, left prosecutrix in the parked automobile and entered a bar where they remained for a considerable time. They then proceeded to a dance at Indianola. They did not see or get the Pew children at McCook. They went from the dance to the Pew home and arrived there about 12:30 Sunday morning, July 29, 1956. They occupied separate rooms and there was no further unusual incident that night.

The prosecutrix awoke about 5:30 or 6 o'clock on Sunday morning. She got up and dressed. Later the accused was awake and he arose and drank some beer. The prosecutrix prepared breakfast and the accused ate. His conduct towards her for about an hour was very much the same as it was the preceding afternoon and

evening. She slapped him and pushed him away but he persisted. She repeatedly told him she wanted to go home and he said he was not going to take her home. The accused got his hands on her breasts and her legs and pulled up her dress. She was afraid of him. Follett was still asleep. She got out of the house and ran. She had decided to go to the vacant Crampton house about a half-mile away to see if there was anyone there. The accused followed her in an automobile, overtook her, drove in front of her, and made her get in the car and return to his home. She told him that she was going home because he would not take her. Follett was up when they got back and prosecutrix asked him if he would return her to the Green home. He said he would and he did in his automobile. The three of them left the Pew home about 8:30 or 9 a. m., went to the Green home, and met and talked with the sister of prosecutrix and her husband. Nothing was said about the happenings that had transpired in the interval between the time the prosecutrix left the Green home the day before until she returned there. Luella Green, hereafter spoken of as Mrs. Green, noticed that the prosecutrix did not act naturally. She seemed scared and unusually quiet. She said very little to her sister or any of them. She went to her room and stayed there much of the time. She did not speak when the conversation was directed to her. Mrs. Green said she was in McCook Saturday and that she met Mrs. Mihm who said that Mrs. Pew was away from home. The accused said in reference to this that they took the children back to McCook that morning. Mrs. Green asked him where Mary Lu was and he said she was up in the hills. Mrs. Green said that was what she had heard and the accused said the two little girls were with Mary Lu's mother. Mrs. Green asked him where they were then and he said they took them back to McCook.

The next day Mrs. Green asked prosecutrix if Mary Lu had been gone. Prosecutrix did not answer but she

commenced to cry. She made her sister promise not to tell anything that was told her. The prosecutrix said the accused had declared that if she told what had taken place, something terrible would happen to her. Prosecutrix told her sister all that had taken place, as she testified later in the trial of this case. Mrs. Green then saw the bruises on the right arm, on both legs above the knees, and the injured place on the neck of the prosecutrix. Mrs. Green went to the Pew home on Tuesday afternoon, found the accused there alone, and talked with him. She asked him what had happened and he at first denied that he had done anything improper but later he told her he had tried to rape prosecutrix but he did not accomplish it.

The testimony of Don Follett, produced on behalf of the accused, corroborates in some respects the version of the happenings as related by the prosecutrix. The accused did not testify in the case. He relied upon his plea of not guilty and the presumption of innocence.

The elements of the offense charged against the accused that he was a male person of more than 18 years of age at the time alleged; that the prosecutrix was a female less than 18 years of age and a virgin at that time; and that the offense was committed in Hitchcock County, Nebraska, were supported by substantial and uncontroverted evidence of probative force sufficient to support the verdict of conviction. The remaining element of the offense charged was that the accused at the time stated unlawfully made an assault on the prosecutrix with intent of the accused to have sexual intercourse with her. She was then more than 15 and less than 18 years of age and a virgin. It is unimportant whether accused intended to accomplish the act charged against him with the consent of the prosecutrix and without force exerted by him. She was incapable of consenting to the indulgence he sought or to an assault by him with an intent by him to secure such indulgence. The exertion of force by the accused or resistance by the

female is not essential to the commission of the crime of assault with intent to commit rape if the latter is more than 15 and less than 18 years of age and chaste and the accused is at least 18 years of age. Hughes v. State, 154 Neb. 86, 46 N. W. 2d 904.

In a prosecution for assault with intent to commit rape, if a prosecutrix testifies to facts constituting the offense and the accused denies the commission of the crime, the testimony of the prosecutrix must be corroborated on material points by other evidence to justify or sustain a conviction of the accused. Onstott v. State, 156 Neb. 55, 54 N. W. 2d 380. However, it is not essential in such a case that the prosecutrix be corroborated by other evidence as to the principal act constituting the offense but it is indispensable that she be corroborated as to material facts and circumstances which tend to support her testimony as to the principal fact in issue. Onstott v. State, *supra;* Medley v. State, 156 Neb. 25, 54 N. W. 2d 233; State ex rel. Klostermeier v. Klostermeier, 161 Neb. 247, 72 N. W. 2d 848. The prosecutrix testified in detail of the facts constituting the offense as related herein in the recitation of the circumstances of the case. The accused by the plea of not guilty interposed by him denied all that was charged or proven against him. The prosecutrix was corroborated by undisputed evidence as to many of the material matters included in her testimony. In the circumstances of this case proof of facts justifying a finding, independent of the testimony of the prosecutrix, that accused had opportunity and inclination to assault her with intent to ravish her was sufficient corroboration of direct positive evidence by her that he did so. Whetstone v. State, 99 Neb. 469, 156 N. W. 1049; Stapleman v. State, 150 Neb. 460, 34 N. W. 2d 907.

The accused argues that intent is an essential element of the offense charged against him and that the evidence does not support a finding against him in this respect. The intent with which an act is done is generally a mat-

ter of inference from the nature of the act and the circumstances surrounding its commission. Intent, when important, may not be capable of and is not required by law to be shown by direct evidence. It may be established by or deduced from facts and circumstances which characterize the transaction and from which the existence of intent may reasonably be inferred. If intent is an essential element of a crime, as it is in this case, to justify a conviction, the circumstances must be of so conclusive a nature as to show intent beyond a reasonable doubt. Prichard v. State, 135 Neb. 522, 282 N. W. 529. If an accused is at least 18 years of age and capable of completing the indulgence he seeks, takes hold of or physically abuses or injures the person of a female incapable of consent because of her age, with the intention to then have sexual intercourse with her, a finding is justified that he thereby committed the offense of assault with intent to rape. Beer v. State, 129 Neb. 366, 261 N. W. 824; Prichard v. State, *supra*. The wrongful conduct of the accused toward prosecutrix included all of the acts above enumerated and many more. They were indicative of his degrading desires and lustful intention.

The assignment of insufficiency of evidence to justify the conviction is without foundation. The proof permitted a finding of guilt of the accused of the offense charged. The credibility of witnesses and weight of evidence are for the jury to determine in a criminal case and the verdict of the jury may not be disturbed by this court unless it is clearly wrong. Griffith v. State, 157 Neb. 448, 59 N. W. 2d 701. The verdict in this case is not clearly wrong. The judgment should be and it is affirmed.

AFFIRMED.