STATE OF NEBRASKA, APPELLEE, V. JOHN BURTON,
APPELLANT.
118 N. W. 2d 502

Filed December 7, 1962. No. 35305.

Straight Townsend, Holtorf, Hansen & Fitzke, and Alfred J. Kortum, for appellant.

Clarence A. H. Meyer, Attorney General, and Homer G. Hamilton, for appellee.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, SPENCER, BOSLAUGH, and BROWER, JJ.

MESSMORE, J.

The plaintiff in error, subsequently referred to as defendant, was charged with the crime of indecent fondling of a minor. In that connection, the alleged offense is defined by section 28-929, subdivision (2), R. S. Supp., 1961. Trial was had to a jury. The jury returned a verdict finding the defendant guilty as charged. The defendant filed a motion for a new trial which was overruled. Thereafter the defendant was sentenced to be confined in the Nebraska State Penitentiary for a period of 2 years at hard labor, Sundays and holidays excepted. Defendant seeks a review in this court.

The defendant contends that the trial court erred in overruling the defendant's plea in abatement, and that the defendant's constitutional rights were violated in that the defendant was tried in the district court for Scotts Bluff County without first having had a preliminary hearing as required by law.

The defendant filed a plea in abatement in the district court for Scotts Bluff County. The basis of the plea was that the evidence was insufficient to show that an offense had been committed and that the defendant probably committed it. Attached to the plea in abatement is a transcript of the evidence adduced at the preliminary hearing in the county court of Scotts Bluff County.

The State of Nebraska filed an answer to the plea in abatement denying all the allegations therein contained.

The defendant's plea in abatement was overruled by the trial court.

The evidence taken at the preliminary hearing, attached to the plea in abatement and which is a part of the transcript, was not offered as a part of the evidence

when the plea in abatement was argued and is not contained in the bill of exceptions.

In Lingo v. Hann, 161 Neb. 67, 71 N. W. 2d 716, it was said: "The functional purpose of the preliminary hearing is stated in section 29-506, R. R. S. 1943, as follows: 'If upon the whole examination * * * it shall appear that an offense has been committed and there is probable cause to believe that the person charged has committed the offense, the accused shall be committed to the jail of the county in which the same is to be tried, there to remain until he is discharged by due course of law; * * *.'

" 'It is in no sense a trial of the person accused. Its purpose is to ascertain whether or not a crime has been committed, and whether or not there is probable cause to believe the accused committed it.' Roberts v. State (145 Neb. 658, 17 N. W. 2d 666) supra.

"The effect of the foregoing, if found to exist, is to hold the accused for trial in the district court, which has jurisdiction to try him. See Dobrusky v. State, 140 Neb. 360, 299 N. W. 539." That is what the county court of Scotts Bluff County did. See, also, Cotner v. Solomon, 163 Neb. 619, 80 N. W. 2d 587; Birdsley v. Kelley, 159 Neb. 74, 65 N. W. 2d 328.

In Hoffman v. State, 164 Neb. 679, 83 N. W. 2d 357, this court said: "When the sufficiency of a preliminary hearing is called in question by a plea in abatement, 'the only question to be considered is with reference to the powers of the magistrate which are called into action in the determination of what shall be the result of such hearing. If he is compelled to act judicially, and to determine as a judicial question the matters over which he has jurisdiction, and does determine such questions upon competent evidence, then an error in judgment as to the result reached can not be determined by a plea in abatement. It is only where there is in fact no preliminary examination, either in form or sub-

stance, that advantage can be taken of by such a plea.' Jahnke v. State, 68 Neb. 154, 94 N. W. 158."

In Bradehorst v. State, 168 Neb. 203, 95 N. W. 2d 495, this court said: "This court has consistently held that, to review a decision of the trial court on error proceedings in a criminal case on a question of fact, it is essential that such evidence be preserved in a proper bill of exceptions. The evidence introduced on the hearing of issues of fact formed by a plea in abatement in a criminal case and the State's answer thereto cannot be reviewed here unless preserved in a bill of exceptions. Burnham v. State, 127 Neb. 370, 255 N. W. 48."

In Burnham v. State, 127 Neb. 370, 255 N. W. 48, this court said: "* * * the evidence adduced by the parties and considered by the court, in determining issues presented by the plea in abatement and the answer thereto, is not preserved in the bill of exceptions. * * * To review a decision of the trial court upon appeal in a criminal case upon a question of fact, where evidence was submitted and considered, it is essential that such evidence be preserved in a proper bill of exceptions, * * *."

In the light of the foregoing authorities, the above assignments of error set forth by the defendant cannot be sustained.

The defendant contends that the evidence was not sufficient to sustain the verdict, and is contrary to law. This requires a review of the evidence.

The chief of police of Mitchell located the Nile Theater in Mitchell and testified generally to its interior and exterior.

Shirley Cline testified that she lives in Mitchell and is in the fifth grade; that she remembered Monday, August 21, 1961; that on that day she saw the defendant in the theater; that prior to that she and Victoria Brunz had been swimming; and that after swimming, the two girls went into the theater and saw the defendant sitting at his desk in the candy shop. She talked to the defendant, and they stayed in the candy shop 15 or 20

minutes after which she, Victoria, and the defendant, went upstairs into the balcony of the theater and into the projection room. She further testified that it was completely dark in the theater, but they could see each other; that there were lights on in the projection room; that all three of them were in the projection room and were standing up; and that the defendant sat down in a chair. This witness further testified that she was dressed in a pair of jeans and a blouse, and Victoria was dressed in like manner; that Victoria pulled down her jeans, and the defendant opened his jeans; that the defendant touched Victoria around the waist first, and touched her between the legs more than once with his hand; and that Victoria had removed her clothing and was in front of the defendant when he touched her. After the defendant stopped touching Victoria she pulled up her jeans and walked over and stood against the wall. It was getting late in the afternoon and Victoria and Shirley decided to go home. When they left the projection room, the defendant had his pants zipped, but they had been unzipped before.

On cross-examination Shirley testified that the defendant asked Shirley and Victoria to go upstairs; that they were upstairs in the projection room about 20 minutes; and that while Victoria was standing against the wall she took down her jeans and her panties and walked over to the defendant. On re-direct examination Shirley testified that when she and Victoria were ready to leave the theater the defendant gave her some candy.

Victoria Brunz testified that she lived in Mitchell; that she was in the fourth grade; and that she was 10 years old at the time of trial. She further testified that she saw the defendant in the Nile Theater the afternoon of August 21, 1961; that after leaving the swimming pool she and Shirley went to the Nile Theater; that when they got to the theater they went up into the balcony; that she and Shirley took off the clothes

they were wearing; and that at the time the defendant was sitting in a chair. She further testified that the defendant made the girls go by him; that the defendant touched her between her legs with his hand more than once; that the defendant put his hand on her sexual organs; that Shirley watched; that she was in the balcony undressed with the defendant about 15 minutes; that the defendant did the same thing to Shirley as he did to this witness; that after they put on their clothes, they went to the candy shop and the defendant gave them money; that he sometimes gave them 50 cents and sometimes a dollar; that on that day he gave them both 50 cents; and that they left the theater by the back door and went home. Before they left the theater the defendant told them that if anyone saw them they would get into trouble. Victoria further testified that she was afraid to tell what happened, and that the defendant told them not to tell their mothers, and that they had to go home.

Jacqueline Brunz, the mother of Victoria Brunz, called by the defendant, testified that she made a complaint in this matter to the county authorities; that the matter first came to her attention when one of the other children told her Victoria had some money that the defendant had given her; that she questioned Victoria and Victoria told her what had happened; that she made complaint to the chief of police; and that she had a conversation relating to this matter on August 22, 1961, with Victoria in their home, when Victoria told her what had happened the previous day, which would be August 21, 1961. Victoria told her mother that she took off her clothes, as the defendant told her to do so. On cross-examination this witness testified that Victoria told her that the defendant touched her, "messed with her body," and patted her.

A salesman for a radio station testified that he usually called on the defendant at Mitchell on Monday. He could not testify as to whether or not he saw the defend-

ant on Monday, August 21, 1961. He did receive a check from the defendant on August 22, 1961.

The chief of police of Mitchell testified for the defense that he received a complaint on August 22, 1961, from Mrs. Brunz; that he contacted the county attorney on August 23, 1961; and that there was a conference on August 26, 1961, with the county attorney, Mrs. Brunz, the two girls, and this witness present. The county attorney questioned the girls, and they told him what happened on Monday afternoon, August 21, 1961.

On cross-examination this witness testified that the girls told the county attorney that they went into the theater, went upstairs with the defendant to the projection room where they undressed, and the defendant played with them with his hands on their private parts. The girls redressed and left the theater. The girls also said that at that time the defendant had his pants unzipped, and that this had happened more than once. The girls made a statement that they received a small sum of money and some candy or a drink; and that the defendant had asked them to undress.

The defendant testified that he was a theater manager for the Midwest Amusement Company for 16 years and thereafter in business for himself; that he had resided in the community for 20 years; that he lived in a house in Scottsbluff; and that his daughter and her husband lived in the main part of the house and he and his wife lived in the basement apartment. He further testified that the operation of the theater is in the evening, and there is necessary paper work to be done during the daytime; that the Sunday operation of the theater is continuous from 1 p.m., until closing time; that his wife, Marguerite, helps him; that she works the floor of the theater and he works the projection room; that his wife also works at the Standard Hardware Company in Scottsbluff; that he usually spends from 10 o'clock in the morning until approximately 4 o'clock in the afternoon, either at his desk, doing seat repair, advertising,

carpet repair, or projector repair work; and that he usually drove back to Scottsbluff at 4 p.m., to pick up his wife at 5:30, and they got back to Mitchell at 6:30 or quarter until 7 p.m. He further testified that he was not in the theater on August 21, 1961, due to having trouble with a stomach ulcer that weekend; that on August 21, 1961, he was in bed, and had been in bed most of that day because of his physical condition; that his wife went to work at 9 a.m., came home at 11:30 a.m., went back to work at 12:30 p.m., and came home at 5:30 p.m.; that when she came home he was sitting in a chair with his robe and slippers on; that he then got dressed and he and his wife drove to Mitchell, arriving there at approximately 10 minutes until 7 p.m.; that he did not see Shirley Cline or Victoria Brunz that day; that during the years he has been operating the theater he has become acquainted with the two girls and other children in the Mitchell community; that with reference to his relationship with these two particular girls, they would come in, visit and talk, and want treats or something like that, and he usually gave them a candy bar or a coke; that he never molested Victoria Brunz in any way; that the previous week Shirley Cline and Victoria Brunz came into the theater at about 3 or 4 p.m., and asked the defendant what he was doing and he told them, then they asked him for a coke which the defendant refused to give them; that the girls had on little dresses; and that they pulled their dresses up, and the defendant told them they had better get home or he would call their mothers. The defendant further testified that his daughter visited him at 2 o'clock the afternoon of August 21, 1961.

A neighbor of the defendant who lived north of the defendant's residence testified that August 21, 1961, was the first day of his vacation. He was unable to say whether he saw the defendant's car parked in front of the defendant's house on that day.

The defendant's wife corroborated the defendant's

testimony with reference to his illness on August 21, 1961, and that he was home all day, and further testified that she had a prescription filled at a drug store to be used by the defendant.

Defendant's daughter testified that she remembered August 21, 1961; that her parents went to Mitchell about 6 p.m., on that day; that her father's car was in front of the house all of that day; and that she saw her father in his home at about 2 o'clock that afternoon and he was in bed.

A police officer testified that on August 21, 1961, at approximately 4:30 or 5 p.m., he pulled up in front of the post office and saw the defendant sitting on the fender of his car in front of the theater in Mitchell; that he noticed two little girls along the side of the post office, between the post office and the Legion club; and that when the girls saw him they ducked to the back end of the building. On cross-examination this witness testified that to the best of his knowledge Shirley Cline and Victoria Brunz were the girls that he saw duck behind the post office building.

It was stipulated that the defendant appeared before the county court on August 29, 1961.

The defendant moved for dismissal of the case primarily because of the failure of proof on the part of the State to prove the crime charged, and if the court ruled adversely on that motion, the defendant moved to direct a verdict for the defendant for the same reason. The trial court overruled this motion.

This court has not heretofore, in a case of this kind, laid down a rule with reference to the evidence required to corroborate the prosecutrix. We believe that the rule announced in Onstott v. State, 156 Neb. 55, 54 N. W. 2d 380, which is a case of assault with intent to commit rape, should be adopted. There are a number of cases in this jurisdiction setting forth the same rule. Therefore, we hold that in a prosecution for fondling or massaging in an indecent manner the sexual organs

of a girl under 16 years of age, it is not essential to a conviction that the prosecutrix should be corroborated by other witnesses as to the particular act constituting the offense. It is sufficient if she be corroborated as to material facts and circumstances which tend to support her testimony, and from which, together with her testimony as to the principal fact, the inference of guilt may be drawn.

As to corroboration, the following additional principles are applicable.

"* * * corroboration may consist of the proof of such surrounding facts and circumstances as will support her testimony against the accused as to the principal fact, and will identify the accused as the party guilty of the crime. It may consist of circumstantial evidence. Nabower v. State, 105 Neb. 848; Kotouc v. State, 104 Neb. 580; Day v. State, 102 Neb. 707; Hammond v. State, 39 Neb. 252." Robbins v. State, 106 Neb. 423, 184 N. W. 53.

In the instant case, although the two young girls were reluctant to testify and confess to an immoral act on their part, their testimony was such, coupled with the testimony of other witnesses, as to show corroboration of the testimony of the prosecutrix. The defendant admitted to giving these young girls money to get rid of them. The record also discloses that the defense called the mother of the prosecutrix who was asked on direct examination about the conversation she had with her daughter, and the details of this conversation were brought out on cross-examination as heretofore set forth.

"This court, in a criminal action, will not interfere with a verdict of guilty, based upon conflicting evidence, unless it is so lacking in probative force that we can say, as a matter of law, that it is insufficient to support a finding of guilt beyond a reasonable doubt." Williams v. State, 115 Neb. 277, 212 N. W. 606. See, also, Haines v. State, 135 Neb. 433, 281 N. W. 860; Onstott v. State, *supra.*

"It is only when there is a total failure of proof in a criminal case to support a material allegation in the information, or where the testimony adduced is of so weak or doubtful a character that a conviction based thereon could not be sustained, that the trial court will be justified in directing a verdict of not guilty." Wanzer v. State, 41 Neb. 238, 59 N. W. 909. See, also, Onstott v. State, *supra;* State v. Wilson, *ante* p. 86, 115 N. W. 2d 794.

The defendant in his motion for new trial predicated error on the part of the trial court in refusing to give certain instructions requested by the defendant, and on certain instructions given by the trial court. The defendant, in argument to this court, apparently has abandoned this assignment of error. However, we have examined the instructions requested by the defendant and given by the trial court.

Some criticism was made of instruction No. 9 given by the trial court, which is the same instruction requested by defense counsel shown in requested instruction No. 8. The only difference is the substitution of the word "an" for the word "the," which does not in any manner change the subject matter contained in the instruction requested by the defendant.

"Instructions should be read and construed together, and, if as a whole they state the law correctly, they will be held sufficient, although one or more of them, considered separately, may be subject to just criticism." Brown v. Chicago, B. & Q. Ry. Co., 88 Neb. 604, 130 N. W. 265. See, also, Wright v. Lincoln City Lines, Inc., 163 Neb. 679, 81 N. W. 2d 170. This assignment of error is without merit.

The defendant has not specifically assigned as error, but has made objection to certain testimony and the disposition of it in his brief. This testimony consisted of a statement by a deputy sheriff of Scotts Bluff County that when he arrested the defendant he smelled "like an odor like you get off of a mental person." Objection was

made by the defense counsel who asked "that that be stricken as a conclusion of the witness and the jury admonished to disregard that." The court sustained the objection. The defendant asserts that a motion for mistrial would have been in order, but the defendant's request for admonishing the jury should have been allowed and followed. The defendant fails to point out in what manner this procedure was prejudicial to his defense. The rule in Jurgensen v. State, 135 Neb. 537, 283 N. W. 228, is applicable, which states that error may creep into the proceedings in a criminal prosecution in spite of impartiality, care, and vigilance of the trial judge. It is only error prejudicial to a right of accused or the denial of a substantial legal right that requires the reversal of his conviction. Harmless error does not require a second trial. The law recognizes the possibility of harmless imperfections in the proceedings of judicial tribunals and does not defeat itself by exacting absolute perfection in bringing malefactors to justice.

A statute relating to the review of criminal prosecutions reads in part as follows: "No judgment shall be set aside, or new trial granted, or judgment rendered in any criminal case, on the grounds of misdirection of the jury, or the improper admission or rejection of evidence, or for error as to any matter of pleading or procedure, if the Supreme Court, after an examination of the entire cause, shall consider that no substantial miscarriage of justice has actually occurred." § 29-2308, R. R. S. 1943.

The defendant's contention is without merit.

The defendant complains that the county attorney was allowed to ask leading questions of the two 9½-year-old girls here involved, and to repeat the questions in order to obtain a response from them as witnesses. As previously stated, these young girls were reluctant to confess that they had acted improperly. After repeated assurances of counsel and the court, the girls told their story in a rather realistic and clear manner.

The law recognizes that the trial court has wide discretion in this type of situation. The trial court permitted the asking of leading questions in the instant case to a limited degree. The following is applicable.

In Woodruff v. State, 72 Neb. 815, 101 N. W. 1114, the court said: "Some of these questions which were permitted to be asked and answered may have been, and probably were, in a measure, of a leading character, but regarding which we are satisfied no abuse of discretion was committed by the trial court in suffering the examination to be pursued in the manner in which it was. It is, say all the authorities, discretionary with the trial court in both civil and criminal cases to allow leading questions on the direct examination; the discretion, of course, being a legal one and subject to proper limitations. Stephen, Digest of the Law of Evidence, 445, and note; McKelvey, Evidence, sec. 237, and notes. In Edwards v. State, 69 Neb. 386, it is held that the trial court has a large, though not unlimited, discretion in granting or refusing permission to ask a witness leading questions. In support of the rule there is cited in the opinion, Schmelling v. State, 57 Neb. 562, and Welsh v. State, 60 Neb. 101."

The general rule is stated in 98 C. J. S., Witnesses, § 332, p. 46. This rule is to the effect that it is usual and proper for the court to permit leading questions in conducting the examination of a witness who is immature, unaccustomed to court proceedings, inexperienced, agitated, terrified, or embarrassed while on the stand, and lacking in comprehension of the questions asked.

We find no prejudicial error was committed by the trial court in respect to the matter complained of.

Other matters complained of by the defendant are without merit and need not be discussed.

For the reasons given in this opinion, the judgment of the trial court is affirmed.

AFFIRMED.