STATE OF NEBRASKA, APPELLEE, V. JESSE NARCISSE, APPELLANT.

188 N. W. 2d 715

Filed July 9, 1971. No. 37853.

Davis, Bailey, Polsky & Huff and Keith A. McIntyre, for appellant.

Clarence A. H. Meyer, Attorney General, and Harold S. Salter, for appellee.

Heard before WHITE, C. J., SPENCER, BOSLAUGH, SMITH, McCOWN, NEWTON, and CLINTON, JJ.

SMITH, J.

A jury found Jesse Narcisse guilty of sodomy and robbery. He appeals. We note these contentions: (1) The evidence was insufficient to carry the case to the jury. (2) The court denied Narcisse a fair trial in failing to direct the prosecutor to accept a pretrial offer to stipulate to acts of sodomy by someone. (3) The law required corroboration of the victim's testimony, but there was none.

The victim, age 21 and a white student at the University of Nebraska at Lincoln, testified as follows: After a long walk and bowling with a girl friend, the victim was returning afoot and alone to his room at Abel Hall the early morning of June 27, 1970. Near the corner of 22nd and Vine Streets in Lincoln, he was accosted by a black stranger "X," who conversed briefly. The victim,

afflicted with petit mal epilepsy since 1959 and weary, then accepted from "X" the offer of an automobile ride to the hall. Instead "X," accompanied by three other blacks, one of whom was Narcisse, drove to a house unknown to the victim. The automobile was a light color, four-door model, between 1962 and 1965. It might have been a Chevrolet, but the victim was not sure.

"X" induced the victim to enter the house. Narcisse accompanied them. From the end of a brief, harmless conversation in the house to the conclusion of the affair the victim was constantly menaced and fearful of great bodily harm. "X" was wielding a knife. Narcisse was participating willingly. Indeed he began the affair by repeatedly striking the victim around an eye, the sharp blows leaving cuts. "X" and Narcisse proceeded alternately and repeatedly to perpetrate copulation per os and per anus upon the victim. They stole $1 plus from him, and they forced him to write a $35 check payable to "U-Save."

The three men having dressed, "X" drove the automobile to U-Save, a gasoline station. The victim sat on the right front seat and Narcisse on the back seat. At the station the attendant altered the payee to "Crest" because he then was unable to cash the check. An attempt to cash the check at Crest proved unsuccessful. "X" then returned to U-Save where the attendant altered the payee to "U-Save." "X's" purchasing 2 cartons of cigarettes and gasoline enabled the attendant to cash the check. "X", receiving the proceeds, kept $11 and one of the cartons. He gave Narcisse two $5 denomination bills and the other carton. He then drove the victim to Abel Hall at 2:30 a.m., Narcisse remaining in the back seat. When the victim left the automobile, "X" offered him a ring which the victim refused. The victim had been a prisoner of the two blacks approximately 2 hours.

The police were not notified until 10 a.m. At a lineup the victim identified Narcisse, saying he was "almost" certain. Testimony of the victim to times, places, and

descriptions was interspersed with statements such as "I am not sure."

The U-Save attendant, Preston Lapointe, generally corroborated the victim's testimony to events there. The automobile was a 1961 model Impala Chevrolet, four-door, and light brown. Lapointe knew Narcisse by name, and he positively identified him in the lineup as well as at the trial. He observed the victim upon the return from Crest: "He was sitting with his right arm on the panel with the window up . . . sullen. He didn't say nothing. He didn't move. Didn't even look."

Narcisse returned afoot to the station, according to Lapointe, $2\frac{1}{2}$ hours later or at 3 a.m. Having requested Lapointe to call a taxicab, he accepted a ride in an automobile occupied by blacks.

Narcisse, age 19, testified to an alibi. Numerous witnesses, including a white candidate for a Ph.D. degree, the candidate's wife, and a Lincoln police officer corroborated the alibi in part. Times, events, and identification of automobiles, clothing, and Narcisse's hair style were sharply disputed.

Aside from the question of corroboration, the evidence was sufficient for conviction on both counts under State v. Leary, 185 Neb. 76, 173 N. W. 2d 520 (1970).

Narcisse's complaint concerning the prosecutor's refusal to stipulate to sodomy is novel in Nebraska. Stipulations that will shorten a trial without prejudice to the parties facilitate administration. We refer to the policy only to emphasize its irrelevance here. A new trial for defendant in the ordinary case would be a strange sanction for breach of a duty to stipulate.

The acts of sodomy were material to identification of Narcisse by the victim. The evidence may have exposed Narcisse to danger greater than that faced by an accused rapist. See A. L. I., Model Penal Code, 264, 276, and 277 (Tent. Dr. No. 4, 1955). The risk dwindles with better juries and greater understanding of the sexual

deviate. Furthermore, to find reversible error would feed a practice of frittering away public interests in social defense. Refusal of a trial court in a criminal case to direct the prosecutor to accept an offer by defendant to stipulate to an essential element of the alleged offense ordinarily constitutes no ground for a new trial.

The statute defining sodomy does not require corroboration. See § 28-919, R. R. S. 1943. In the absence of statute we have required corroboration of the victim's testimony on charges of rape, assault with intent to commit rape, adultery, incest, and indecent fondling of a minor. See, State v. Gero, 184 Neb. 107, 165 N. W. 2d 371 (1969); Pew v. State, 164 Neb. 735, 83 N. W. 2d 377 (1957); Blue v. State, 86 Neb. 189, 125 N. W. 136 (1910) *(semble);* State v. Witmer, 174 Neb. 449, 118 N. W. 2d 510 (1962); State v. Burton, 174 Neb. 457, 118 N. W. 2d 502 (1962). Under current judicial rules, corroboration generally is sufficient if it covers material facts tending to support testimony of the victim to the principal fact. Pew v. State, *supra.*

"Corroboration requirements are presently common in seduction statutes, occasionally encountered in rape statutes, not usual in legislation dealing with sodomy or indecent exposure. A uniform policy on all sex offenses has a prima facie validity; but Wigmore's attack on *any* such requirement gives one pause in extending it to new areas. In addition, it has been argued that a rigid requirement of corroboration would virtually preclude prosecutions in typical cases of minor sexual assault in dark theaters . . .." A. L. I., Model Penal Code 151 (Proposed Off. Dr., 1962).

On balance testimony of the alleged victim in a criminal prosecution for sodomy with a human being is insufficient for conviction unless it is corroborated in accordance with rules pertaining to other sexual offenses. See Abbott v. State, reversed on rehearing, 113 Neb. 524, 206 N. W. 153 (1925) *(semble).* The evidence tend-

ing to corroborate the victim's testimony was sufficient. The judgment is affirmed.

AFFIRMED.