PEOPLE v SESSON

1. CRIMINAL LAW—PROSECUTOR'S COMMENTS—FAIR TRIAL—APPEAL AND ERROR.

A prosecutor's remarks to the jury about the sociological consequences of heroin addiction, the motivation of pushers, and the dangers of undercover narcotics work are generally known and may be judicially noticed and did not deprive a defendant charged with selling heroin of a fair trial, there was no miscarriage of justice and without an objection and a request for a curative instruction the error was not properly preserved for appeal.

2. CRIMINAL LAW—PROSECUTOR'S COMMENTS—PRESERVING QUESTION.

A claimed error that the closing argument of a prosecutor was improper, where there was no objection and no request for an appropriate instruction from the trial court, will not be considered on appeal if the prejudicial propensity of the argument could have been curtailed by a curative instruction.

3. WITNESSES—TESTIMONY—SELF-INCRIMINATION—PRIVILEGE.

A witness under subpoena does not waive his constitutional rights to refuse to answer questions not relating to the offense charged against the defendant upon the grounds that the answers might tend to incriminate him by reason of the fact that that witness had previously answered the same questions in another proceeding, because an answer given in the instant case would also be self-incriminatory.

4. WITNESSES—CROSS-EXAMINATION—POLICE INFORMANT—PRIOR ARRESTS.

Cross-examination by the defense attorney of the prosecution's chief witness, a police informant, about his prior arrests for narcotics offenses was improperly ruled as an inadmissible subject matter when the alleged purposes of such cross-examination in a trial for sale of narcotics were to show possible

REFERENCES FOR POINTS IN HEADNOTES

[1, 2] 42 Am Jur 2d, Prosecuting Attorney § 20.
[3] 58 Am Jur, Witnesses § 99.
[4] 58 Am Jur, Witnesses § 471.

extrinsic pressures on the witness, to show his interest in the outcome of a trial, disclosure of any promises of leniency to him by the police in return for his testimony, and similar matters which might affect his credibility; and an evidentiary hearing should have been held for disclosure of information concerning any such arrangements before defense counsel was precluded from pursuing the questions.

Appeal from Berrien, Chester J. Byrns, J. Submitted Division 3 December 5, 1972, at Grand Rapids. (Docket No. 13826.) Decided February 23, 1973. Leave to appeal denied, 389 Mich 801.

Mack Sesson was convicted of illegally selling heroin. Defendant appeals. Remanded for an evidentiary hearing, with instructions for disposition.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *Ronald J. Taylor,* Prosecuting Attorney, and *Edward L. Skinner,* Assistant Prosecuting Attorney, for the people.

*Ryan, McQuillan & Vander Ploeg* (by *Thomas R. Fette),* for defendant.

Before: T. M. BURNS, P. J., and HOLBROOK and VAN VALKENBURG,* JJ.

HOLBROOK, J. Defendant, Mack Sesson, was convicted in a two-day jury trial held March 17–18, 1971, of illegally selling a quantity of heroin in violation of MCLA 335.152; MSA 18.1122, and sentenced to 20 to 40 years imprisonment. Defendant brings this delayed appeal by leave of court.

Of the six prosecution witnesses, the testimony of five was confined to the chain of custody of the exhibits involved; one of the five, duly qualified as an expert, identified the substance transferred in

---

* Former circuit judge, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

the alleged sale as diacetyl morphine, more commonly known as heroin, diluted with sugar and methepyrilene. No serious question is raised over this testimony and it need not be summarized here. Only one witness, Dorman Johnson, testified as to the details of the substantive crime and it is necessary to review his testimony.

In the evening of October 17, 1970, Dorman Johnson, an undercover agent working for the Michigan State Police on a narcotics operation, was driven from the South Haven State Police Post to an establishment known as the "Fair Avenue Recreation [Hall]" located in Benton Township, by the senior agent assigned to the case, Frederick Johnson, Dorman's uncle. During the trip Frederick gave Dorman a $5 bill, presumably to be used as part of the police operation. Dorman entered the pool hall alone, intending to purchase controlled substances from a particular individual in the poolroom. The person from whom he wanted to buy illegal drugs had none at that time, so Dorman prepared to leave. On the way out, he was directed by an unknown person to a fellow who was supposed to have drugs at that time, the defendant, Mack Sesson.

Defendant at first refused to sell Dorman Johnson any drugs; then Johnnie Kirk stated to the defendant that Johnson was "OK", and defendant sold Johnson a tinfoil packet containing heroin. Johnson gave the defendant a $5 bill in exchange for the tinfoil packet, then left, returned to the car, and turned the packet over to the senior agent.

On cross-examination, Johnson admitted that he had been mistaken in several respects in his testimony at the preliminary examination. During the

preliminary examination, Johnson had stated that a third person, identified as agent 558, had been a witness to the transaction in question; at the trial, he testified that the identity of this third person was unknown to him. The other variations in his trial testimony were minor, such as whether he left from South Haven or from somewhere else when the operation began, the exact point at which Fred Johnson gave him the $5 bill he used to effect the purchase, and the identity of the person who referred him to the defendant. At the preliminary examination, Dorman testified that defendant had taken a tinfoil packet from his pocket, while at trial he admitted that he did not know from where on defendant's person the packet came.

Concerning his credibility, Dorman Johnson stated that he had been working as an agent for the State Police only several weeks prior to October 17, 1970; and also because as an agent he was involved in many such transactions, he felt he had become confused. Johnson admitted that he had been convicted of a Selective Service violation, which consisted of his refusal to be inducted, since he was a Jehovah's Witness. He spent 13 months in prison on this charge, and at the time of trial was on parole arising from that Federal offense. He also admitted having been arrested on a narcotics charge in 1970 in Grand Rapids.

At the close of the people's proofs, defense counsel moved for a directed verdict, which motion was denied. Defendant then called John Kirk to the stand, who testified that on the date and at the time of the alleged crime he, John Kirk, was in the Fair Avenue Recreation Hall, but did not see either Dorman Johnson or the defendant in the room. Defendant then testified in his own behalf,

and denied having sold any drugs to Dorman Johnson on October 17, 1970, or at any other time.

Defendant raises four issues on appeal which we will discuss in proper order.

## I

Was the evidence sufficient to warrant a jury verdict of guilty of the crime charged?

The standard employed in determining sufficiency of the evidence questions in criminal cases is "whether the evidence warrants a finding of guilty beyond a reasonable doubt of the crime charged". *People v Schram,* 1 Mich App 279, 282 (1965). A review of the record indicates that the people's evidence in this case, if believed by the triers of fact, warrants a finding of guilty beyond a reasonable doubt. *People v Crittle,* 38 Mich App 118 (1972).

Defendant's allegation of error in regard to the sufficiency of evidence is clearly untenable. It is true that the testimony of the people's witness, Dorman Johnson, and the testimony of defendant was conflicting. When conflicting testimony is presented, it is properly left to the jury to resolve the conflict. *People v Blackwell,* 17 Mich App 377 (1969). The credibility of the people's witness was for the jury and likewise when the defendant took the stand and testified, his credibility was for the jury and the jury could disbelieve him. *People v Mills,* 16 Mich App 179 (1969). There is no merit in defendant's contention as to issue I.

## II

Did the prosecutor deprive the defendant of a fair trial by virtue of certain remarks made in his closing statement to the jury?

In considering the merit of defendant's contention with regard to the prosecutor's allegedly prejudicial remarks, we set out the relevant portions of the prosecutor's closing argument:

"As Mr. Globensky told you, this is a serious case. It is a serious charge. We are talking about sale of heroin, not a sale of marijuana. There has been a lot of controversy about that; it is not a sale of just any narcotic; it is a sale of heroin.

"Now, I am not going to go into any great length here about what heroin does to a man, what heroin does to a man's body, what heroin does to a man's life. I think you are all pretty much aware of it. But I think we are all agreed that a person who sells this stuff, a person who makes it available to some of these poor people whose lives are ruined, that person is indeed guilty of a very serious crime.

"Now, many salesmen, many pushers of heroin, have an excuse. It is a feeble excuse, but it is an understandable one; and that is that they are addicts themselves; they are users themselves; they have been led down the path, down the road of degradation, to the point where they have to do anything to support their habit; and so they have resorted to this way to make the money to support their own habit, and so it is sold to others. But the defendant doesn't even have that excuse. You heard him on the stand. He says he has never even used heroin. He has never even used marijuana and he has never even used a narcotic. He doesn't even have an excuse. He sold it; he made it available to these people for one reason, to line his pockets.

"Yes, it is a serious crime, ladies and gentlemen. I just want you to fully realize the seriousness of it before we start to go into the evidence. * * *

"Ladies and gentlemen, you took a solemn oath in this case; and I feel confident that you will carry out that oath. This is a man who is dangerous to the community, a man who will sell heroin. It doesn't stop with his selling heroin; it doesn't stop there. The persons who use it have to support their habits and they have to commit crimes. It mushrooms; it gets worse and

worse, and that is what happens if you let this man continue to do it. * * *

"Now, the question has come up why did Dorman Johnson do something like this, make buys, risk his life, go into this community and work for the police? Why did he do something like this if not for gain, for monetary gain or some gain? Why indeed? How involved has he been? How many fine outstanding men, I wonder, have been lured into the use of heroin, and I wonder how many of those people, what they would like to do to the people that lured them into that use in the first place. What gain? Perhaps the only gain that was necessary for him that justified what he did, exposing his name to the court and defendant and you just was— perhaps the only satisfaction was to stamp out the traffic in heroin. Perhaps he knows too well what that traffic does."

The prosecutor claims that his argument was based upon matters of common or general knowledge, subjects which may be referred to and counted upon by way of argument or illustration in the closing address to the jury.

In 23A CJS, Criminal Law, § 1096, p 157, it is stated in part as follows:

"Matters of common and general public information and of known and settled history properly may be referred to, and commented on, by way of argument and illustration; and counsel may allude to such principles of divine law relating to the transactions of men as may be appropriate to the case."

The issue then is whether or not the sociological consequences of heroin addiction, the motivation of heroin pushers in general, and the dangers attendant upon undercover narcotics work are generally known within the Berrien County area, assuming that the prosecutor may argue facts which may be judicially noticed. In *People v White,* 38 Mich App 651, 655 (1972) this Court, *per* Judge LEVIN, stated:

"In the judgment of a considerable portion of the citizenry there is an enormous difference between selling marijuana and selling heroin. This judgment is reflected in the recent amendment of the statutes which reduces the maximum prison term for the 'delivery' of marijuana to 4 years, while the maximum penalty for the delivery of heroin is set at 20 years. (The maximum prison term for possession of marijuana has been reduced to one year, while the maximum for possession of heroin is four years.) These substantial differences in the maximum penalties adumbrate the extent of the difference in the public's attitude regarding marijuana and heroin."

This observation by the Court indicates that many of the evils associated with traffic in heroin are generally known in Michigan, to the extent that the people, acting collectively through the Legislature, have amended various laws quite recently in order to deal with the problems engendered by the heroin traffic. This community knowledge would seem to extend at least to the sociological consequences of heroin addiction, which include a rise in crimes against personal property in order to enable various addicts to supply their habits. In reality, this is a national phenomenon that has been the subject of very recent comment by the President of the United States, and in editorials in almost every major news media.

With respect to the prosecutor's assertion that many heroin pushers peddle their nefarious wares in order to obtain money to feed their habits, even if this were not a judicially noticeable fact, it would not seem that the defendant was unduly prejudiced by the remark. Even if this were prejudicial to the defendant, this remark was not so blatantly unfair as to be immune to a curative instruction.

The dangers inherent in undercover police work

would seem to be judicially noticeable, for it would seem logical that one of the reasons for engaging in sub rosa detective work is that such activities are less productive if carried on in the open.

With respect to these now objected to remarks by the prosecutor, if defense counsel thought that an inference unfavorable to his client might arise, he could have objected and requested an appropriate instruction from the trial court, which he did not do. This Court has ruled that where the closing argument was improper, that the claimed error will not be considered on appeal if its prejudicial propensity could have been curtailed by curative instruction. *People v Humphreys,* 24 Mich App 411 (1970); *People v Majette,* 39 Mich App 35 (1972).

*People v Ignofo,* 315 Mich 626 (1946), cited by the defendant, is inapposite to the case at bar. The prosecutor's statements complained of in the case at bar do not involve expressions of the personal opinion of the prosecutor with respect to the defendant's guilt or innocence, and thus *People v Ignofo, supra,* is not relevant.

It appears that the prosecutor's remarks were intended to impress upon the jury the seriousness of the crime, and the concomitant duty on the part of the jury to consider with care the testimony in this case before returning with a verdict. We rule that the remarks complained of by defendant did not deprive defendant of a fair trial; that there has been no miscarriage of justice, and that absent an objection and request for a curative instruction the alleged error has not been properly preserved for this appeal. *People v Panknin,* 4 Mich App 19 (1966); *People v Dawson,* 29 Mich App 488, 494–495 (1971).

## III

Did the trial judge commit prejudicial error in permitting the primary witness for the prosecution to decline to answer certain questions propounded by defense counsel on the grounds that the answers might tend to incriminate him?

As a witness under subpoena, rather than as a defendant, Dorman Johnson, by taking the witness stand, did not waive his right to refuse to answer questions upon the grounds that the answers might tend to incriminate him. *Brown v United States,* 356 US 148, 155; 78 S Ct 622, 627; 2 L Ed 2d 589, 597 (1958). Dorman Johnson in the trial of this case refused to answer a question inquiring whether he had used any drugs in the year preceding the trial; he refused to answer on the grounds of his Fifth Amendment privilege.

The questions that defense counsel posed to Dorman Johnson, and to which Johnson invoked his Fifth Amendment privilege, did not relate to the offense charged against the defendant. The questions dealt with collateral matters introduced solely to impeach the witness' credibility. The fact that the defendant alleges that Johnson answered the same questions in another proceeding does not change the fact that the answer given in the instant case would also be self-incriminatory. See 8 Wigmore on Evidence (1961 ed), § 2276, p 470. Though Johnson admitted that he had been arrested previously, the fact of being arrested is not incriminating, nor is testimony concerning that arrest self-incriminatory of itself.

At the trial, defense counsel did not object to Johnson's invoking his Fifth Amendment privilege. In fact, for purposes of impeaching Johnson's credibility, defense counsel seems to have been pleased with Johnson's reliance on his Fifth

Amendment privilege. In his closing argument to the jury, defense counsel attacked Johnson's refuge behind his privilege against self-incrimination:

"He has been involved in narcotics. He told you he has; and he also, when asked about any use or anything recently he took the Fifth Amendment. I suggest to you that if you haven't been involved and if you haven't used it, you don't need to take the Fifth Amendment. You can say no, no way."

Furthermore, the claimed fact that Dorman Johnson previously testified concerning self-incriminating facts in a previous trial of John Kirk in the lower court and thereby waived his privilege does not appear in the record in this case. Thus, there is no reason appearing in this record why the trial judge should have had any reason whatsoever to suspect that Johnson's claim of his privilege had been somehow waived. Thus, considering the facts as they appeared to the trial judge at the time Johnson invoked his privilege, it cannot be said on this record that the trial judge abused his discretion in allowing the cross-examination of Dorman Johnson to be thus limited by reliance on a constitutional privilege.

## IV

Did the trial court commit prejudicial error in restricting defense counsel's cross-examination of the prosecution's chief witness concerning his prior arrests and pending criminal charges?

After Dorman Johnson refused to answer questions concerning his use of narcotics on grounds of self-incrimination, defense counsel inquired as to whether Johnson had been recently arrested for a narcotics offense. Johnson responded in the affir-

mative, at which point the prosecutor objected to further questions on the grounds of relevancy. After extensive discussion, the court ruled that any further testimony on the subject would be inadmissible, since an arrest has no probative value. The rule that permits a cross-examiner to inquire as to previous arrests of a witness when attacking that witness' credibility has long been established in Michigan. *Driscoll v People,* 47 Mich 413, 417 (1882); *People v Nixon,* 243 Mich 630 (1928). However, the *Nixon* case is no longer a viable authority, at least since the decision in *People v Brocato,* 17 Mich App 277 (1969), where the Court held that a defendant testifying at his own trial may not be asked if he has been arrested or charged with crime, when the arrest or charge has not resulted in a conviction, *and where the only purpose of the question is to impeach the defendant's credibility as a witness.* In *People v James,* 36 Mich App 550 (1971), the Court extended the *Brocato* rule to a non-defendant witness who testified for the defendant, on the grounds that the reasoning in *Brocato,* that arrests have little probative value, was applicable, especially since the trier of facts is more likely to credit the testimony of disinterested third persons than the testimony of a keenly interested defendant. We apply this rule in the instant case to the people's witness, Dorman Johnson. *Swain v Alabama,* 380 US 202, 219, 220; 85 S Ct 824; 13 L Ed 759, 772 (1965).

The Court in *James* held that prior arrests, without more, have little or no probative value when determining the credibility of a witness. Defendant does not seriously question the truthfulness or wisdom of this general statement. However, defendant asserts that the instant case presents a different situation. The witness here was

not questioned as to arrests merely to show an untrustworthy character, but rather to ascertain whether or not a promise had been given the witness in return for this testimony, or whether any undue pressure or influence had been exerted upon the witness. Whether or not any criminal charges were pending at the time of Johnson's testimony was not only relevant, but essential in determining whether Johnson was under duress from the prosecution at the time of trial. Defendant concedes that in general prior arrests, standing alone, have little probative value with regard to a witness's inherent credibility. However, defendant contends that when a police informant is the only witness against the defendant, and his testimony is uncorroborated, the question of whether or not any arrests are pending at the time of his testimony is highly relevant, especially in light of the well-known fact that undercover narcotics agents are often individuals who have criminal charges pending against them related to narcotics. Further, that the witness's chance to have the charge against him reduced or dismissed is often proportionate to the amount of "help" he gives the prosecutor or police in the interim between his arrest and final disposition of the case. The pressures on such a witness to obtain convictions by his testimony may be great. Defendant contends that when testing the credibility of such a witness, he has a right to a full and complete inquiry into the existence of any extrinsic pressures which might bias or motivate the witness. Dorman Johnson freely admitted to having been arrested in 1970; and defendant contends that it was his right to inquire as to the charges upon which he was arrested. If these charges were related to drugs, defendant had the further right to inquire what arrangements, if any, were made

between the witness and the arresting agency, especially where, as here, the witness's testimony was uncorroborated.

The more important aspect of the issue presented is whether defense counsel should have been permitted to probe the possibly latent interest of the witness as it affected his credibility. If Dorman Johnson were in fact operating as an undercover agent in return for a prosecutorial promise of leniency with respect to his arrest on a narcotics charge, and was under some pressure to produce convictions of narcotics offenders in order to fulfill his half of the bargain, then Johnson certainly had an interest in the outcome of this proceeding. MCLA 600.2158; MSA 27A.2158 provides:

"No person shall be excluded from giving evidence on any matter, civil or criminal, by reason of crime or for any interest of such person in the matter, suit, or proceeding in question, or in the event of such matter, suit or proceeding, in which such testimony may be offered, or by reason of marital or other relationship to any party thereto; but such interest, relationship, or conviction of crime, may be shown for the purpose of drawing in question the credibility of such witness, except as is hereinafter provided."

The statutory use of the word "may" indicates that the matter is left to the discretion of the trial court. However, various decisions of the Michigan courts indicate that the trial judge's discretion with respect to the examination of a witness concerning his interest is a very narrow one. In *Taylor v Walter,* 385 Mich 599 (1971), reversing 384 Mich 114 (1970), the Court held that the trial court should permit broad cross-examination of a witness in order to discredit his testimony, even where there is substantial danger of undue preju-

dice. The trier of fact may properly consider the interest or lack of interest on the part of a witness in the outcome of a criminal prosecution in evaluating the testimony of such witness. *People v Hughes,* 20 Mich App 294 (1969). The interest of a witness is never irrelevant; in fact, the interest of a witness is so central to the credibility of his testimony that, when a witness, on cross-examination, denies having any interest in the result of the trial, it is competent to show, by *collateral* evidence, that such statements are actually false. *Geary v People,* 22 Mich 220, 222 (1871).

In the recent case of *Giglio v United States,* 405 US 150; 92 S Ct 763; 31 L Ed 2d 104 (1972), it was ruled that where the government failed to disclose an alleged promise of leniency made to a key witness in return for his testimony, even though the government attorney who conducted the trial did not know of the promise, a new trial was required. In the instant case the defendant's attorney was precluded from pursuing questions concerning the arrest in Kent County in 1970 of the prosecution's witness which may have disclosed information concerning such an arrangement as was present in the *Giglio* case.

We therefore remand to the trial court to conduct an evidentiary hearing to ascertain if such an arrangement was present, and if it was present to order a new trial. We do not retain jurisdiction.

Affirmed in all particulars except to remand for the purpose herein ordered.

All concurred.