PEOPLE v BILLINGTON

Docket No. 52028. Submitted March 5, 1982, at Grand Rapids.—
    Decided May 19, 1982.

Kyle M. Billington was charged with second-degree murder and
    was convicted of manslaughter, Calhoun Circurt Court, Stanley
    Everett, J. Defendant appeals, alleging several errors. *Held:*

1. The trial court did not err in its explanation to the jury of
the character and effect of a grant of immunity which had been
given to an accomplice. Defense counsel had mischaracterized
the grant of immunity and the trial court's action properly
clarified the mischaracterization.

2. The trial court refused to give part of a criminal jury
instruction regarding an accomplice's testimony. The instruc-
tion given by the court, however, adequately instructed the jury
regarding the accomplice's testimony.

3. The defendant, who was a juvenile at the time of the
offense, argues that the probate court's waiver of jurisdiction
over him was based on improper considerations. The matter is
not properly before the Court of Appeals because the defendant
did not appeal the waiver to the circuit court. He has thereby
waived the issue.

4. Evidence of the defendant's involvement in a breaking and
entering was properly admitted to establish the defendant's
access to the murder weapon.

5. A presentence conference is not a critical stage of the
criminal proceeding, and the defendant's absence from such a
conference was not a violation of any of his rights absent a
showing of prejudice.

    Affirmed.

REFERENCES FOR POINTS IN HEADNOTES

[1] 81 Am Jur 2d, Witnesses § 663.
[2] 75 Am Jur 2d, Trial § 925.
[3] 75 Am Jur 2d, Trial § 695.
[4] 4 Am Jur 2d, Appeal and Error § 10.
    21 Am Jur 2d, Criminal Law § 339.
[5] 29 Am Jur 2d, Evidence §§ 323, 324.
[6] 29 Am Jur 2d, Evidence §§ 320, 321.
[7] 21A Am Jur 2d, Criminal Law § 922.

1. Witnesses — Jury.

A jury may properly consider whether a witness's testimony is affected by his own interest.

2. Trial — Jury Instructions — Review.

Jury instructions must be read as a whole in determining whether error requiring reversal occurred in the giving of the instructions.

3. Criminal Law — Jury Instructions — Criminal Jury Instructions.

Failure of a trial court to use a portion of an applicable criminal jury instruction is not error requiring reversal where the instructions as given adequately and correctly instructed the jury on the matter at issue.

4. Criminal Law — Juveniles — Appeal — Waiver of Probate Jurisdiction.

A juvenile over whom a probate court has waived jurisdiction in a criminal matter must first seek review of the waiver decision in circuit court before the propriety of the waiver decision may be considered by the Court of Appeals; appeal to the Court of Appeals of a probate court order waiving jurisdiction over a juvenile is by application for leave, not as a matter of right (MCL 600.863; MSA 27A.863).

5. Criminal Law — Evidence — Other Crimes — Rules of Evidence.

Evidence of a criminal defendant's commission of other crimes may not be introduced to show his disposition toward criminal conduct; however, such evidence is admissible to show knowledge or intent where they are elements of the crime charged (MRE 404[b]).

6. Criminal Law — Evidence — Other Crimes — Rules of Evidence.

Evidence disclosing a defendant's other crimes is admissible upon a showing of: (1) substantial evidence that the defendant committed the other acts, (2) special circumstances of the acts tending to establish one of the items enumerated in the controlling rule of evidence, and (3) the materiality of the enumerated item to a determination of the defendant's guilt of the offense charged (MRE 404[b]).

7. Criminal Law — Presentencing Conference.

A presentence conference is not a critical stage of a criminal proceeding and a defendant's absence from such a conference

does not result in a violation of the defendant's rights absent a showing of prejudice.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *Conrad J. Sindt,* Prosecuting Attorney, and *Franklin K. Line, Jr.,* Assistant Prosecuting Attorney, for the people.

*Rolf E. Berg,* Assistant State Appellate Defender, for defendant on appeal.

Before: D. F. WALSH, P.J., and CYNAR and W. F. HOOD,* JJ.

CYNAR, J. Defendant was charged with second-degree murder, MCL 750.317; MSA 28.549. On January 29, 1980, a jury found him guilty of the lesser included offense of manslaughter, MCL 750.321; MSA 28.553. Defendant was sentenced to 10 to 15 years imprisonment. Defendant appeals as of right. We affirm.

Defendant was 16 years old at the time of the alleged offense. Following a waiver of jurisdiction from juvenile court, defendant was convicted of second-degree murder, MCL 750.317; MSA 28.549, in 1977. He appealed to this Court, and this Court reversed and remanded the case for a new trial. *People v Billington* (Docket No. 77-3435, decided August 7, 1979 [unreported]).

On retrial, evidence indicated that on the afternoon of September 27, 1976, the deceased, Doug Norris, and two friends were parked in two cars in Wilson Park in Athens, Michigan. The victim's companions, Tim Prough and Dave Flanders, testified that the two cars were parked side by side, facing in opposite directions. Flanders was sitting

---

* Circuit judge, sitting on the Court of Appeals by assignment.

with Norris in Norris's car, while Prough was in his own vehicle. The three of them were sitting in their cars drinking beer and passing a marijuana cigarette when they heard a single loud blast; Norris's companions testified that they observed the rear window of his car shatter and saw him slump forward. It was later determined that Norris was struck by a single shot from a .270-caliber rifle and that the shot was the cause of his death.

The prosecution introduced evidence that defendant and three friends were involved in a breaking and entering during which the gun involved in the shooting was stolen. The prosecutor moved for admission of this evidence to establish defendant's intent or absence of mistake and accident. The trial court granted the request over defendant's objection that the evidence was not probative of any of the statutory purposes and was highly prejudicial. However, each of the witnesses involved in the break-in testified that the purpose of taking the guns was to resell them. They testified that hours before the shooting they had hidden the guns in the park and left the area.

David Franz testified that his house was broken into and that three guns and some ammunition were missing. The boys testified that after they had taken the rifles they test-fired them in a field. After testing the guns, they placed them in the trunk of the car and returned to Athens. Defendant and a companion allegedly tried to sell the guns but were unable to do so. The rifles were then taken to Wilson Park, wiped clean, wrapped in a blanket and hidden.

The motive for the killing, according to the people, was that defendant disliked the victim because both had dated the same young lady. The prosecution produced testimony that defendant

had threatened to "waste" Norris as a result of these alleged ill feelings.

Direct testimony regarding defendant's role in the shooting came from defendant's companion, Bobby Edmonds, who testified that on the afternoon of the shooting he and defendant sat in front of the library as Norris drove by in the direction of the park. Edmonds observed Norris enter Wilson Park and relayed this information to defendant. Defendant and Edmonds then entered the park, and each retrieved one of the rifles that had been hidden after the breaking and entering. Edmonds then squatted down as defendant rested the .270-caliber rifle, which was equipped with a scope, on Edmonds's shoulder and pulled the trigger. Edmonds stated that he understood the reason that he and defendant had returned to the park because, while at the library, defendant had said that he was going to "waste" the deceased.

On cross-examination, Edmonds admitted that he had previously told various contradictory stories to the police. According to Edmonds's original version, it was John Martin, and not defendant, who was involved in the killing. Two witnesses testified that Edmonds's reputation in the community for truthfulness was poor. In order to secure Edmonds's testimony, the prosecutor had petitioned the circuit court for a grant of immunity, which was granted.

Defendant testified on his own behalf. He admitted being involved in the burglary at Franz's home but stated that the guns were intended to be resold. He stated that after he and Edmonds returned to the park, he put a revolver (also taken during the break-in) with the rifles. After doing so, he and Edmonds returned to town. Defendant denied any involvement in the killing.

The defense also presented evidence to show that Norris's death was the result of an accidental shooting. The evidence presented indicated that Wilson Park was sometimes used by persons with guns for target practice. An investigator and ballistics expert testified that, after examining the physical evidence, it was his opinion that the trajectory of the bullet evidenced that the bullet had ricocheted before striking the victim's car. However, this evidence was contradicted by testimony presented by Lieutenant David Townshend of the Michigan State Police Crime Laboratory that the bullet was traveling at an upward angle when it struck the deceased's car but that nothing indicated that the bullet had ricocheted before hitting the car.

The jury convicted defendant of the lesser included offense of manslaughter.

Defendant contends that the trial court erred reversibly in ruling improper defense counsel's argument concerning the grant of immunity to an accomplice and, further, that error resulted in the trial court's refusing to give the standard jury instructions regarding greater scrutiny of accomplice testimony. In his opening statement defense counsel attempted to explain the nature of the grant of immunity and its relationship to Bobby Edmonds's credibility:

"And consider this when you consider Mr. Edmonds's testimony, ladies and gentlemen. Mr. Edmonds has been granted what we call immunity. That means, as Judge Everett has told you, that he must testify. He is the only one that the prosecutor knows was in the park that day. He is the only one that the prosecutor knows has anything to do with this murder, based upon the evidence, because he has told them that he was there. And he came up with this theory. 'But, I didn't have

anything to do with the shooting. I was merely standing there. Kyle Billington did it all.' And, therefore, I submit to you that Mr. Edmonds's testimony amounts to bought testimony, and the prosecutor bought it. And the price they paid was giving him immunity. And, as a result, they are not going to prosecute him if he testifies. If he does not testify, I submit to you that the document with which he was granted immunity means nothing, and he can be prosecuted for this case.

"What is his motive for testifying?"

The trial judge interrupted defense counsel and explained what he viewed as the significance of the grant of immunity:

"*The Court:* Excuse me, Mr. Hofman. That is not quite accurate. He must testify, as I explained to the jury this morning. The privilege to remain silent exists in order to prevent incriminating yourself. Once the punishment—the possibility of punishment is taken away, you no longer can say, 'I will remain silent; I will not testify.' You have lost the threat of punishment and, therefore, you are required to testify. You cannot shield yourself or utilize the constitutional privilege to remain silent."

Again in closing argument defense counsel attempted to illustrate to the jury how the grant of immunity may have influenced Bobby Edmonds's testimony:

"Take a good look at people's Exhibit 42 where Mr. Edmonds was given immunity. It doesn't just say that he's been given immunity. It says, as I read it and you will have the opportunity to look at it, but he will not be prosecuted for his part in this or for anything about this if he testifies against Kyle Billington, not just that he's given immunity. He's given immunity only if he testifies against Kyle Billington."

The trial judge again interrupted:

"*The Court:* Mr. Hofman, I'm going to interrupt you, and you've expressed to the jury this at least on two occasions. This is not proper argument and that is not what occurred. As I have explained to the jury before, when an individual is given immunity, they must testify. They cannot refuse to testify because they no longer can be punished, therefore, there is no constitutional right to remain silent. Immunity cannot be given in the manner which counsel is now suggesting that it was done in this case. It is either granted and he must testify or it is not granted and he makes his own decision whether he remains silent or not."

As the United States Supreme Court stated in *Napue v Illinois,* 360 US 264; 79 S Ct 1173; 3 L Ed 2d 1217 (1959):

"The jury's estimate of the truthfulness and reliability of a given witness may well be determinative of guilt or innocence, and it is upon such subtle factors as the possible interest of the witness in testifying falsely that a defendant's life or liberty may depend." *Id.,* 269.

The order granting immunity does not require that Bobby Edmonds give testimony favorable to the prosecution. Nor does it state, as defendant argues, that the testimony if not favorable could result in prosecution of Bobby Edmonds. The order granting immunity was made an exhibit in trial and was available to the jury. It is clear that the order was entered before any testimony was given by Edmonds and was not conditioned on the giving of favorable testimony.

Although there is no dispute that it is proper for a jury to consider whether a witness's testimony is affected by his interest, *People v Sesson,* 45 Mich App 288; 206 NW2d 495 (1973), the trial court acted properly in clarifying the mischaracterization of the evidence by defense counsel.

Defendant also claims error in the trial court's refusal to give part of the Michigan Criminal Jury Instructions, CJI 5:2:03(8), which reads:

"And so, to summarize, you should examine an accomplice's testimony with greater care than you would use to examine the testimony of an ordinary witness; it should be carefully and closely examined before a conviction is based upon it."

Omission of this part of the instruction in this case was harmless error beyond a reasonable doubt.

Jury instructions must be read as a whole to determine whether error requiring reversal has occurred. *People v Starks,* 107 Mich App 377, 385; 309 NW2d 556 (1981).

At one point the trial court instructed the jury as follows:

"*The Court:* You should examine an accomplice's testimony closely and accept it only with caution and care. You may consider whether that testimony is supported in whole or in part by other evidence or circumstances because if it is so supported, it may be more dependable, however, an accomplice witness may properly be used by the prosecution, and you may convict upon that testimony alone if you believe that testimony and if it proves the guilt of the defendant beyond a reasonable doubt.

"In deciding whether or not to believe Bobby Edmonds, you should be guided by the following considerations: Whether the grant of immunity may have caused him to testify favorably. You may consider whether the testimony is falsely slanted in such a way as to place guilt upon the defendant in order to further the witness's own interest or any other bias or motive which may have prompted or induced the witness in his testimony. You may take into consideration the witness's prior criminal record, and you should also con-

sider how the witness impressed you upon his appearance on the witness stand."

In response to defendant's objection, it was the position of the trial judge that he had covered the instruction and that there was no need to give it twice.

The trial judge adequately instructed the jury as to the accomplice's testimony. He instructed them also as to "caution and care", which instruction is satisfactory. *United States v Scoblick*, 124 F Supp 881 (MD Pa, 1954); *Ward v United States*, 296 F2d 898, 901 (CA 5, 1962); *United States v Willis*, 473 F2d 450, 454 (CA 6, 1973).

Defendant argues that his conviction must be reversed because the probate court waived jurisdiction based on improper considerations.

Pursuant to MCL 712A.4; MSA 27.3178(598.4), a two-stage waiver hearing was held. As a result of the first stage, the court found probable cause to believe that defendant committed the offense. The purpose of the second stage is to determine whether the interests of the child and the public would best be served by retaining or waiving jurisdiction over the minor. After the second stage of the waiver hearing, the court agreed to waive jurisdiction over defendant. It appears that the trial court relied in part on defendant's prior criminal record in deciding to waive jurisdiction. Defendant claims that his record includes convictions which were obtained in violation of his right to counsel.

Defendant contends the use of unconstitutional prior convictions to establish guilt or enhance punishment is a violation of the accused's right to due process of law. There is no showing on the record that defendant's prior juvenile convictions

were constitutionally infirm. Defendant admits that the waiver was not initially challenged in the circuit court on the present grounds. In *People v Mahone,* 75 Mich App 407; 254 NW2d 907 (1977), the Court held that where a probate court waives jurisdiction over a juvenile to try him as an adult, the juvenile must first seek review of that decision in the circuit court before this Court will consider the question. In *People v Figlus,* 86 Mich App 552; 272 NW2d 722 (1978), and in *Mahone,* this Court held that where the defendant did not invoke the circuit court's review of the probate court's decision to waive jurisdiction, defendant waived any challenge he might have had to the infirmity of the probate court proceedings.

The above-cited cases in which the defendants were found to have waived any challenge to the infirmity of the probate court proceedings were all based upon MCL 712A.22, 701.45a; MSA 27.3178(598.22), 27.3178(45.1). These statutes have now been superseded by the Revised Judicature Act, specifically by MCL 600.863; MSA 27A.863, which states that a person aggrieved by a final order, sentence or judgment of a probate court may appeal from that order to the circuit court; appeal to this Court in a case of this type is by application and not as a matter of right. Leave to appeal not having been granted, this issue is not properly before this Court. Therefore the statutory requirements have not been met, and because defendant had two chances to appeal the probate court's waiver when he was tried and subsequently retried in the circuit court, defendant has waived any challenge to the infirmity of the probate court's waiver decision.

We find defendant's contention that evidence regarding the prior breaking and entering was improperly admitted to be without merit.

Under MRE 404(b), evidence of other criminal acts is not admissible to prove a defendant's character or to show that he acted in conformity with past behavior, but such evidence may be admitted for other purposes, such as to prove motive, opportunity, intent, preparation, or absence of mistake. Thus, evidence of commission of other crimes may not be introduced to show disposition towards criminal conduct; however, such evidence is admissible to show knowledge or intent when they are elements of the offense charged. *People v Davidson,* 88 Mich App 276, 279; 276 NW2d 580 (1979); *People v Nichols,* 33 Mich App 63; 189 NW2d 865 (1971).

In the present case, the trial judge recognized the necessity of balancing the probative value of the evidence against its possible prejudicial effect, and did so on the record in conformity with *People v Nabers,* 103 Mich App 354; 303 NW2d 205 (1981); *People v Wilkins,* 82 Mich App 260, 267-268; 266 NW2d 781 (1978), *rev'd on other grounds* 408 Mich 69; 288 NW2d 583 (1980). According to *Nabers, supra,* 363, evidence disclosing a defendant's other crimes is admissible "upon a showing of: (1) substantial evidence that defendant committed the other acts, (2) special circumstances of the act tending to establish one of the enumerated items in MRE 404(b), * * * and (3) materiality of the enumerated item to a determination of defendant's guilt of the charged offense".

In the instant case, the prior breaking and entering was clearly relevant to establish defendant's access to the murder weapon, which fact tends to refute his claimed defense that he did not participate in the shooting and thus had no intent to commit the charged crime. Defendant admitted

participation in the prior offense. All of the requirements of *Nabers* are therefore satisfied.

No error is apparent in the trial court's exercise of discretion in admitting the evidence of the prior crime.

There is no merit to defendant's claim that his rights were violated by reason of his absence from a presentencing conference attended by the sentencing judge, the prosecutor, the probation officer and defendant's counsel. We regard the issue in the instant case to be controlled by *People v Pulley,* 411 Mich 523, 531-532; 309 NW2d 170 (1981). There, as here, the record contains no indication of prejudice. Furthermore, we do not regard a presentence conference to be a critical stage of the criminal proceedings. *People v Bellafant,* 105 Mich App 788, 791; 307 NW2d 422 (1981).

Affirmed.