STATE OF NEBRASKA, APPELLEE AND CROSS-APPELLANT, V. JESSE L. PERRIGO, APPELLANT AND CROSS-APPELLEE.

510 N.W.2d 990

Filed January 21, 1994.   No. S-92-1050.

Thomas M. Kenney, Douglas County Public Defender, and Janine F. Ucchino for appellant.

Don Stenberg, Attorney General, and Donald A. Kohtz for appellee.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, FAHRNBRUCH, and LANPHIER, JJ., and MORAN, D.J., Retired.

MORAN, D.J., Retired.

Jesse L. Perrigo appeals his convictions of first degree murder, see Neb. Rev. Stat. § 28-303 (Reissue 1989), a Class I felony; use of a firearm to commit a felony, see Neb. Rev. Stat. § 28-1205 (Reissue 1989), a Class III felony; and possession of a firearm by a felon, see Neb. Rev. Stat. § 28-1206 (Reissue 1989), a Class IV felony. Perrigo was sentenced to life in prison for conviction of first degree murder, 10 years' imprisonment for conviction of use of a firearm to commit a felony, and 5 years' imprisonment for conviction of possession of a firearm by a felon, all sentences to be served consecutively. The State cross-appeals the district court's refusal to give one of the State's proposed jury instructions.

## FACTUAL BACKGROUND

Around 1 a.m. on November 29, 1991, the morning after Thanksgiving, the body of Jerry Lee Linkenhoker was found in the street by a passing motorist near 144th Street and Military Avenue in Douglas County. Linkenhoker, a cabdriver for Happy Cab, had been last dispatched around 12:21 a.m. to pick up a fare at 72d and Blondo Streets in Omaha at the request of a

caller who gave the name "Schaefer." An autopsy of Linkenhoker revealed that he died of multiple .32-caliber gunshot wounds.

Later the night of November 29, the Douglas County sheriff's investigation led deputies to the home of Jesse L. Perrigo. At the deputies' request, and after being apprised of the investigation, Perrigo and his father, in whose basement Perrigo lived, consented to a search of the home.

During the consensual search of the basement, a brown, leather-type briefcase was found. Inside the briefcase was a .32-caliber six-shot Colt revolver and some of Linkenhoker's personal effects. Perrigo was then arrested for being a felon in possession of a firearm and was read his *Miranda* rights. In response to the deputies' questions, Perrigo stated that Brian Schaefer had given him the gun and the briefcase earlier that day.

Deputy Pamela Giangrosso testified about her questioning Perrigo at the Douglas County sheriff's road patrol office. After being advised of his *Miranda* rights, Perrigo told her that Schaefer gave Perrigo the briefcase containing the gun and the cabdriver's effects to hide. Perrigo initially told Giangrosso that he had spent the evening of November 28 by himself at Robert J's Pub, staying there until the bar closed. However, Perrigo later changed his story, telling Giangrosso that he and Schaefer planned to go to a party at 144th and Military and that Schaefer called for a cab to pick them up at the Burger King near 72d and Blondo.

Perrigo told Giangrosso that while Schaefer and he were in the cab, Schaefer told Perrigo they should jump out of the cab and not pay the fare once the cab reached the destination given to the driver. According to Perrigo, once the cab reached the designated point, he jumped from it and ran into a field, hearing gunshots being fired from the area of the cab as he ran. Perrigo said that he ran through the nearby fields to a barn or outbuilding and fell asleep for "a couple of hours." On awakening, he walked home, not returning to the area where he had jumped from the cab. Perrigo told Giangrosso that he did not know where Schaefer went after the shooting or how Schaefer got home.

Giangrosso testified without objection that Perrigo admitted he had stolen a .32-caliber gun and some money from Danny's Bar earlier in the week, in contradiction to what Perrigo had previously told Giangrosso. However, Perrigo denied being in possession of the gun. At that point, the interrogation was interrupted briefly, and Giangrosso was informed outside the interview room that Perrigo had become the suspect in the homicide investigation. Giangrosso then confronted Perrigo with articles of clothing, believed to be bloodstained, found during the search of his home, and with pictures of Linkenhoker at the crime scene and at the morgue prior to autopsy, including a picture showing Linkenhoker's watch pulled down onto his hand. Perrigo insisted that while he had been in Linkenhoker's cab with Schaefer, he was not in the cab when the shooting occurred. The interview then ended, and Perrigo was booked on the charge of criminal homicide and transported to the county's corrections facility.

Shortly after Perrigo was taken to the corrections facility, he insisted on seeing Giangrosso. Giangrosso went to meet with Perrigo, and advised him again of his *Miranda* rights.

Perrigo then changed his account and admitted to Giangrosso that he had taken Linkenhoker's cab from 144th and Military after the shooting. He told Giangrosso that after the shooting, he returned to the cab and found the driver slumped over the steering wheel. He then pulled Linkenhoker out of the cab and drove the cab home. Perrigo said that the reason Linkenhoker's watch was pulled down over his hand was not because Perrigo had attempted to take the watch, but because it got pulled down as Perrigo dragged the driver's body out of the cab. Perrigo admitted that the jeans Giangrosso had shown him earlier were his, and told her that the jeans were probably stained with Linkenhoker's blood, since Perrigo sat in the driver's seat, where Linkenhoker had been shot, as Perrigo drove the cab away from the scene. Further changing his version of the facts, Perrigo admitted that he had suggested to Schaefer that they go out on Thanksgiving evening and do a robbery. However, Perrigo later changed his mind. Perrigo continued to claim he was not in the cab at the time of the shooting. However, Perrigo admitted that he, not Schaefer, had

called for the cab that night. Throughout questioning, Perrigo denied shooting Linkenhoker, maintaining instead that Schaefer did the killing.

Schaefer testified that he saw Perrigo on Tuesday, November 26, 1991. That day, Perrigo showed Schaefer a bank bag with money in it and a .32-caliber gun. Schaefer identified the gun found during the search of Perrigo's home as the same gun he had seen on November 26. Over Perrigo's objection, Schaefer testified that Perrigo told him that Perrigo had stolen the gun, money, and a bank bag from Danny's Bar. Schaefer testified that Perrigo called him several times on Thanksgiving Day, November 28. Schaefer said that around 8 o'clock Thanksgiving evening, Perrigo called and asked Schaefer if he wanted to "go out and make some money." Schaefer told Perrigo that he would think about it. Schaefer testified that he called Perrigo around 9 o'clock Thanksgiving evening and told Perrigo he would not go out with him. Schaefer said he last talked to Perrigo that night sometime after 11:15 and again told Perrigo that he would not go out with him. Schaefer testified that he slept that night in the apartment living room of his grandmother's with whom he stayed. Schaefer's cousin slept on the couch, while Schaefer's great-uncle and Schaefer slept on the floor.

Schaefer testified that during the day of November 29, 1991, Perrigo called him. Perrigo told Schaefer that Perrigo had gone out the night before and "did something very bad last night, and, phew, I almost got caught." In conversations later that day, Perrigo told Schaefer nothing about what had happened the night before. Late on November 29, Schaefer called Perrigo from a bar. Perrigo told Schaefer in that conversation that "the cops were at [Perrigo's] house questioning him about a cab driver."

Over Perrigo's objection, Danny Arcuri, the owner of Danny's Bar, testified that his bar had been burglarized on November 26, 1991. During the burglary, a .32-caliber Colt revolver was stolen. Arcuri identified the gun found during the search of Perrigo's home as the gun taken during the burglary of his bar. At Perrigo's request, the trial court gave a limiting instruction concerning Arcuri's testimony, telling the jury that

Arcuri's testimony about the burglary of Danny's Bar was to be used only in determining the voluntariness and truthfulness of Perrigo's statement to Giangrosso and whether Perrigo's admission was corroborated.

Mark Bohaty, a firearms and tool-mark examiner for the Nebraska State Patrol Criminalistics Laboratory, testified that marks on the test-fired bullets and on bullets found in Linkenhoker's body were consistent with the general characteristics of marks made on bullets fired by Colts of the .32-caliber weapon's design. However, Bohaty further testified that the gun found in Perrigo's home lacked the "unique peculiarities needed for absolute positive identification." In other words, the gun failed to leave its "fingerprints" on test-fired bullets. Therefore, Bohaty was unable to positively determine whether the bullets found in Linkenhoker's body were or were not fired from the gun found in Perrigo's possession.

Before trial, Perrigo moved in limine to prevent introducing into evidence the nature of Perrigo's prior felony conviction and the burglary of Danny's Bar. Both motions in limine were overruled. Perrigo preserved those issues on appeal by objections at trial. The State rejected Perrigo's offer to stipulate that he was a convicted felon for the purpose of the felon in possession of a firearm charge. Instead, the State offered, over Perrigo's objection, a certified copy of the judgment and sentence for Perrigo's prior conviction for attempted burglary. In instructing the jury, the court gave a limiting instruction that the prior felony conviction was to be considered to establish one of the elements of the crime of possession of a firearm by a felon, and repeated its limiting instruction concerning the burglary of Danny's Bar. Perrigo was convicted of first degree murder, use of a firearm to commit a felony, and possession of a firearm by a felon.

## ASSIGNMENTS OF ERROR

Perrigo assigns as error the district court's admission of evidence concerning the nature of his prior felony conviction and prior bad acts, specifically, the burglary of Danny's Bar.

## STANDARD OF REVIEW

"[I]n all proceedings where the Nebraska Evidence Rules apply, admissibility of evidence is controlled by the Nebraska Evidence Rules, not judicial discretion, except in those instances under the Nebraska Evidence Rules when judicial discretion is a factor involved in admissibility of evidence . . . ." *State v. Messersmith*, 238 Neb. 924, 936, 473 N.W.2d 83, 92 (1991). Accord, *State v. Toney*, 243 Neb. 237, 498 N.W.2d 544 (1993); *State v. Jacob*, 242 Neb. 176, 494 N.W.2d 109 (1993); *State v. Thomas*, 240 Neb. 545, 483 N.W.2d 527 (1992). "Although the word 'discretion,' in one form or another, does not appear in either Rule 401 or Rule 403, nevertheless, judicial discretion, as a factor in admissibility, is implicit in Rule 401, concerning the admission of relevant evidence, and Rule 403, regarding exclusion of relevant evidence." *State v. Messersmith*, 238 Neb. at 936, 473 N.W.2d at 92.

## "OTHER ACTS" EVIDENCE

To be admissible, evidence must be relevant and not subject to exclusion under the U.S. or Nebraska Constitutions, federal or state statutes, or rules adopted by the Nebraska Supreme Court. See Neb. Evid. R. 402 (Neb. Rev. Stat. § 27-402 (Reissue 1989)). Evidence not relevant is inadmissible. *Id*. "Relevant evidence means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Neb. Evid. R. 401 (Neb. Rev. Stat. § 27-401 (Reissue 1989)).

Neb. Evid. R. 404(2) (Neb. Rev. Stat. § 27-404(2) (Reissue 1989)) is a rule of relevance. See *State v. Coca*, 216 Neb. 76, 341 N.W.2d 606 (1983).

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he or she acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

Rule 404(2).

> "Rule 404(2) of the Nebraska Evidence Rules is an inclusionary rule permitting the use of relevant, specific

acts for all purposes except to prove character of a person in order to show that such person acted in conformity with character. Thus, Rule 404(2) permits evidence of other acts if such acts are relevant for any purpose other than to show a defendant's propensity or disposition to commit the crime charged."

*State v. Clancy*, 224 Neb. 492, 497, 398 N.W.2d 710, 714-15 (1987), *disapproved on other grounds, State v. Culver*, 233 Neb. 228, 444 N.W.2d 662 (1989). Accord, *State v. Phelps*, 241 Neb. 707, 490 N.W.2d 676 (1992); *State v. Timmerman*, 240 Neb. 74, 480 N.W.2d 411 (1992); *State v. Craig*, 219 Neb. 70, 361 N.W.2d 206 (1985).

"However, Rule 404(2) is subject to the overriding protection of Rule 403 of the Nebraska Evidence Rules . . . ." *State v. Craig*, 219 Neb. at 77, 361 N.W.2d at 213. See, *State v. Phelps, supra*; *State v. Jacobs*, 226 Neb. 184, 410 N.W.2d 468 (1987). "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Neb. Evid. R. 403 (Neb. Rev. Stat. § 27-403 (Reissue 1989)). While most, if not all, evidence offered by a party is "calculated to be prejudicial to the opposing party," only evidence tending to suggest a decision on an improper basis is "unfairly prejudicial" and a concern under rule 403. *State v. Phelps*, 241 Neb. at 722-23, 490 N.W.2d at 688. See, *State v. Messersmith*, 238 Neb. 924, 473 N.W.2d 83 (1991); *State v. Lonnecker*, 237 Neb. 207, 465 N.W.2d 737 (1991). In summary, rule 404(2) requires a two-step inquiry. See *United States v. Beechum*, 582 F.2d 898 (5th Cir. 1978), *cert. denied* 440 U.S. 920, 99 S. Ct. 1244, 59 L. Ed. 2d 472 (1979). First, relevance of the evidence at issue is determined. Rule 404(2) permits admission of other acts evidence if it is relevant to prove some fact of consequence other than the defendant's bad character. See, *State v. Phelps, supra*; *State v. Timmerman, supra*; *State v. Clancy, supra*; *State v. Craig, supra*. Second, rule 403 requires a determination of whether the probative value of the other acts evidence is substantially outweighed by the danger of unfair prejudice.

The principal issue at trial was the identity of the person who killed Linkenhoker. Perrigo asserted in his statements to Giangrosso that Schaefer, not himself, shot and killed Linkenhoker. Perrigo also asserted that Schaefer had given him the briefcase containing the .32-caliber gun and Linkenhoker's personal effects.

On appeal, Perrigo argues that the State offered evidence of the bar burglary and the gun's origin "merely to show Perrigo was a common thief and was acting in conformity therewith." Brief for appellant at 9. Perrigo further argues that the evidence of the burglary could not withstand a rule 403 balance. We disagree.

The identity of the crime's perpetrator was put in issue by Perrigo's statements to Giangrosso. Therefore, who shot Linkenhoker was a fact of consequence at trial. Perrigo admitted taking the .32-caliber gun in the burglary of Danny's Bar a few days before the shooting. His possession of the gun after the shooting, coupled with Schaefer's alibi, discredited Perrigo's story blaming Schaefer for Linkenhoker's death and naming Schaefer as the source of the gun found in Perrigo's possession. Evidence concerning the gun's origin in the bar burglary established that Perrigo possessed the gun before Linkenhoker was killed. When we link the evidence of Schaefer's alibi and the gun that was found in Perrigo's possession after the shooting, we find it more likely that the gun was in Perrigo's possession at the time Linkenhoker was killed. Therefore, the evidence of the burglary of Danny's Bar was relevant under rule 404(2).

The evidence of the bar burglary was also relevant to show Perrigo's opportunity to commit the crime charged. While Wright and Graham note that the meaning of "opportunity" in rule 404 is somewhat mysterious, they conclude that "opportunity" likely means what Wigmore termed "capacity," that is, a "person's physical or mental ability to perform the act in question." 22 Charles A. Wright & Kenneth W. Graham, Jr., Federal Practice and Procedure: Evidence § 5241 at 485 (1978). According to Wright and Graham, no inference concerning a defendant's character is necessary with regard to opportunity, since "the definition of 'character' does not include physical or

mental ability." *Id.* Noting that this opportunity or capacity evidence would often be used to identify the defendant as the one who did the crime, Wright and Graham state that "the ability shown must not be one shared by the entire populace." *Id.* at 486.

Other state and federal courts have recognized the relevance of other acts evidence regarding opportunity or capacity. In *State v. Brooks*, 57 Or. App. 98, 643 P.2d 1324 (1982), the state argued that evidence concerning the theft and resale of certain weapons was necessary to account for the never-found murder weapon's origin and the later discovery of the holster for the missing gun in the defendant's house. The Court of Appeals of Oregon determined that the evidence was admissible because evidence of the theft of the weapons and their resale corroborated an accomplice's testimony and "went far toward showing defendant's opportunity to commit the crime." *Id.* at 107, 643 P.2d at 1330.

In *People v Billington*, 116 Mich. App. 220, 323 N.W.2d 343 (1982), the prosecution introduced other acts evidence that the defendant and three others had stolen the murder weapon, a .270-caliber rifle, during a burglary. In upholding the admission of the other acts evidence, the Court of Appeals of Michigan stated: "[T]he prior breaking and entering was clearly relevant to establish defendant's access to the murder weapon, which fact tends to refute his claimed defense that he did not participate in the shooting and thus had no intent to commit the charged crime." *Id.* at 231, 323 N.W.2d at 348.

The U.S. Court of Appeals for the Tenth Circuit in *United States v. Waldron*, 568 F.2d 185 (10th Cir. 1977), *cert. denied* 434 U.S. 1080, 98 S. Ct. 1276, 55 L. Ed. 2d 788 (1978), upheld the admissibility of other acts evidence under Fed. R. Evid. 404(b). At trial, evidence of a prior burglary was admitted by the defendant and an accomplice, in which burglary guns were stolen which were later used in the charged bank robbery. An accomplice testified that the defendant retained possession of the guns. The 10th Circuit concluded that evidence of the defendant's possession of the weapons was "highly probative" of the issue of identity. *United States v. Waldron*, 568 F.2d at 187. See, also, *United States v. Covelli*, 738 F.2d 847 (7th Cir.

1984), *cert. denied* 469 U.S. 867, 105 S. Ct. 211, 83 L. Ed. 2d 141.

The evidence concerning the bar burglary established Perrigo's possession of a particular .32-caliber gun before Linkenhoker's murder. While no doubt many .32-caliber guns are possessed among the general public, the possession of this particular gun, taken from Danny's Bar, was unique to Perrigo because, unlike other guns, this particular weapon failed to leave distinctive marks on the .32-caliber bullets found lodged in Linkenhoker's body or on bullets test-fired from the weapon by a firearms expert. Possession of this gun before the murder provided Perrigo the opportunity or capacity to use this gun in the crime charged, thereby identifying Perrigo as the one who shot and killed Linkenhoker. Thus, evidence of the bar burglary in which the gun was stolen was relevant under rule 404(2).

Because the admissibility of other acts evidence under rule 404(2) is subject to rule 403, we must consider whether the probative value of the gun's origin in the bar burglary is substantially outweighed by the danger of unfair prejudice or other factors listed in rule 403, such as misleading the jury, confusing the issues, or undue delay. See rule 403.

" 'Probative value is a relative concept; the probative value of a piece of evidence involves a measurement of the degree to which the evidence persuades the trier of fact that the particular fact exists and the distance of the particular fact from the ultimate issues of the case.' " *State v. Bostwick*, 222 Neb. 631, 639, 385 N.W.2d 906, 912 (1986) (quoting Andrew K. Dolan, *Rule 403: The Prejudice Rule in Evidence*, 49 S. Cal. L. Rev. 220 (1976)). Accord, *State v. Messersmith*, 238 Neb. 924, 473 N.W.2d 83 (1991); *State v. Baltimore*, 236 Neb. 736, 463 N.W.2d 808 (1990). "In the context of Neb. Evid. R. 403, 'unfair prejudice' means an undue tendency to suggest a decision on an improper basis." *State v. Lonnecker*, 237 Neb. 207, 210-11, 465 N.W.2d 737, 741 (1991). Accord *State v. Messersmith, supra*.

Evidence of the bar burglary placed this particular gun in Perrigo's possession before the crime, thereby linking him to the shooting of Linkenhoker. Evidence of the bar burglary corroborates Schaefer's testimony. Furthermore, Perrigo's

obtaining the gun in the burglary before the murder provided him an opportunity to use the gun to shoot Linkenhoker, which situation also links Perrigo to the shooting.

The probative value of the burglary evidence was not outweighed by the danger of unfair prejudice or any other factor listed in rule 403. The district court's limiting instruction restricted the jury's use of the evidence and minimized the tendency to suggest a decision on an improper basis. See Neb. Evid. R. 105 (Neb. Rev. Stat. § 27-105 (Reissue 1989)) (restrictive instruction on the proper use of evidence admissible for one purpose but inadmissible for another). Consequently, the court's instruction reduced possible prejudice due to admission of the bar burglary evidence.

Since the evidence concerning the burglary of Danny's Bar was relevant under rule 404(2), and since its probative value was not outweighed by the danger of unfair prejudice under rule 403, evidence of the burglary was properly admitted.

### EVIDENCE OF PRIOR FELONY CONVICTION

Perrigo argues that evidence of his prior felony conviction for attempted burglary was offered by the State "solely to show that Perrigo was a thief and acted in conformity with this bad character." Brief for appellant at 8. He further argues that the probative value of his prior felony conviction was substantially outweighed by the danger of unfair prejudice. We disagree.

It should be noted that rule 404(2)'s list of permissible purposes is not exhaustive. "The 'purposes' set forth in Rule 404(2) are illustrative only and not intended to be exhaustive or mutually exclusive." *State v. Craig*, 219 Neb. 70, 77, 361 N.W.2d 206, 213 (1985). See, *State v. Phelps*, 241 Neb. 707, 490 N.W.2d 676 (1992); *State v. Timmerman*, 240 Neb. 74, 480 N.W.2d 411 (1992). Therefore, if evidence of the prior felony conviction was offered for a purpose other than to show Perrigo's propensity to commit the crime charged, it would be relevant under rule 404(2), and its admissibility would be subject to rule 403.

First, evidence of the prior conviction was offered to establish one of the elements of possession of a firearm by a felon. Therefore, evidence of the prior conviction was relevant

for a reason other than to show Perrigo's propensity to commit the crime charged. Second, the probative value of the prior conviction evidence is not substantially outweighed by the danger of unfair prejudice, since the district court limited the jury's use of the evidence to establish the elements of possession of a firearm by a felon. In light of the court's instruction, we cannot say that the evidence tended to suggest a decision on an improper basis or that Perrigo was unfairly prejudiced. Evidence of Perrigo's prior felony conviction was properly admitted.

Perrigo asserts that the State should not have been permitted to prove the charge of possession of a firearm by a felon by using a copy of the prior judgment, which Perrigo termed "the most prejudicial and inflamatory [sic] evidence available." Brief for appellant at 11. Instead, Perrigo argues that the State should have been required to accept Perrigo's offer to stipulate that he was a felon.

Perrigo further argues that we should by analogy apply our reasoning in *State v. Olsan*, 231 Neb. 214, 436 N.W.2d 128 (1989), which prescribed the parameters for proper impeachment under Neb. Evid. R. 609 (Neb. Rev. Stat. § 27-609 (Reissue 1989)) (impeachment by evidence of conviction of crime). In *Olsan*, we held that a prosecutor's cross-examination of a defendant concerning how many times the defendant had been convicted of felonious escape violated the boundaries established for impeachment by rule 609 and prejudiced Olsan's right to a fair trial. We recognized in *Olsan* that a prosecutor's delving into the nature of a defendant's prior convictions "ravished the rationale of Rule 404, which is equally applicable to Neb. Evid. R. 609 . . . ." 231 Neb. at 225, 436 N.W.2d at 135-36.

We know that rules 404 and 609 have similar rationales. Nevertheless, we decline to fashion a per se rule requiring the State to stipulate to prior convictions. We note that in *State v. Narcisse*, 187 Neb. 209, 188 N.W.2d 715 (1971), we said that refusal of a trial court to accept an offer by the defendant to stipulate to an essential element of the alleged offense ordinarily constitutes no ground for a new trial.

If evidence of a prior conviction is relevant to establish

elements of another crime, and if the probative value of the evidence is not substantially outweighed by the danger of unfair prejudice, the State may prove a prior conviction in any permissible manner. See rules 404(2) and 403. As we said in *State v. Ondrak*, 212 Neb. 840, 842, 326 N.W.2d 188, 189-90 (1982):

> Where conviction of a previous crime is an essential element of the crime charged, proof of prior convictions is properly made by offering in evidence the complaint or information, judgment rendered on the verdict or plea of guilty, evidence that the judgment has become final, and that the defendant in an earlier conviction is the same person presently before the court.

In the present case, the State offered a certified copy of the judgment and sentence from Perrigo's prior conviction of attempted burglary. The trial court limited the jury's use of evidence of the prior felony, reducing the risk the jury would use the evidence improperly. The court's limiting instruction diminished the risk of unfair prejudice, and evidence of Perrigo's prior conviction was properly admitted. Perrigo's assignment of error is without merit. Accordingly, we affirm Perrigo's convictions.

Since we have determined the controversy between the State and Perrigo, we need not address the State's cross-appeal. "It is not our function to render advisory opinions." *State v. Hochstetler*, 214 Neb. 482, 486, 334 N.W.2d 455, 458 (1983). See, also, *Mullendore v. Nuernberger*, 230 Neb. 921, 434 N.W.2d 511 (1989) (existence of case or controversy required for exercise of judicial power in Nebraska).

AFFIRMED.